**CUSTOM LEASING, INC., Petitioner,**

v.

**TEXAS BANK & TRUST COMPANY OF DALLAS, Respondent.**

No. B–2990.

Supreme Court of Texas.

March 7, 1973.

Rehearing Denied April 11, 1973.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for petitioner.

Stigall, Maxfield & Collier, John F. Maxfield, Dallas, for respondent.

DENTON, Justice.

Custom Leasing Inc. brought this suit against Texas Bank and Trust Company of Dallas to recover monies alleged to have been paid by Custom either by mutual mistake or through false representation for release of a chattel mortgage. The trial court rendered judgment for the plaintiff based on a jury verdict, and the court of civil appeals reversed and rendered. 470 S.W.2d 123. We reverse the judgment of the court of civil appeals and remand the cause to that court for further consideration.

In April, 1963, James E. Lyles sought to secure a loan of some $20,000 from Texas Bank & Trust Company of Dallas. He represented himself to be the vice-president of the Gentry Construction Company, and stated the loan was for the purpose of operating a large agricultural project in West Texas. Mr. Warren Sudduth, the vice-president of the bank, negotiated the loan with Lyles. Lyles supplied the bank with a financial statement of Gentry Construction Company, a list of the equipment to be mortgaged, credit references for the company, and a power of attorney authorizing Lyles to act in behalf of George W. Gentry. The bank checked the credit references and subsequently approved a loan of $18,900. The note secured by equipment owned by the Gentry Company was executed by Lyles and purportedly by George W. Gentry, the president of the company. Lyles is the son of Mrs. Gentry by a former marriage. Lyles executed the chattel mortgage as vice-president of the company.

The note was not paid when due. After the note had been extended twice Mr. Sudduth made a personal trip to Midland to see Mr. Gentry and Lyles in an effort to collect the past due note. He was unable to contact Gentry but did see Lyles, and again made demand for payment. At this time Lyles informed Sudduth that Mr. Gentry's signature on the note, chattel mortgage, and other papers involved had been forged. He asked Sudduth not to contact Gentry in return for prompt payment of the note.

In April, 1964, which was shortly after Sudduth contacted Lyles in Midland, Lyles contacted Custom Leasing in Lubbock and represented himself to be an officer of the Gentry Construction Company. They entered into an agreement whereby Gentry Construction Company would sell certain trucks and equipment to Custom Leasing, who would in turn lease the trucks and equipment back to Gentry. Lyles furnished Custom Leasing certain information which included a financial statement of Gentry Construction Company; a depreciation schedule of the equipment; a tax return and personal financial statement of George W. Gentry; and other pertinent information. During the negotiation Lyles informed Custom Leasing that the Texas Bank & Trust held a chattel mortgage on the heavy equipment. A telephone call was placed from the office of Custom Leasing to Mr. Sudduth in Dallas. Sudduth was informed of the arrangement that Custom Leasing was buying the equipment and understood that Custom Leasing wanted title to the property free and clear of any mortgage. The Custom Leasing representative then asked Sudduth what it would take to pay off the note securing the mortgage, to which Sudduth affirmed that at least $19,089 was owed to Texas Bank & Trust by Gentry Construction Co., and replied, the bank would release the mortgage for $19,089.00. The bills of sale and two lease contracts were then executed between Custom Leasing and Lyles. These instruments were signed by Lyles individually and as vice-president of Gentry Construction and purportedly by the Gentrys individually and as officers of the Company. Custom issued two checks, one to Gentry Construction in the amount of $5,675.50, which was cashed by Lyles, and one in the amount of $19,089 to cover a draft drawn on it by Texas Bank and Trust Company for the release of the mortgage.

After several months the payments on the Gentry lease became delinquent. On January 19, 1965, Custom Leasing filed suit against Lyles, the Gentrys, and Gentry Construction, to collect all monies due under the two leases in Lubbock County. Lyles failed to answer, and Custom took an interlocutory default judgment against him for the entire amount on March 12, 1965. Subsequent to the filing of the original case and prior to the taking of the interlocutory default judgment, Custom Leasing took the depositions of Mr. and Mrs. Gentry, and learned for the first time that the Gentrys were claiming that they did not sign any of the instruments involved in either the bank loan and mortgage or the sale and lease-back transaction with Custom. They also denied that Lyles was an officer of the corporation during this entire period and testified that he had no authority to transact business for the Gentrys or the corporation. Thereafter, on March 29, 1965, Custom amended its original petition and joined the bank as a defendant. The bank's plea of privilege was subsequently granted and that claim against the bank was severed and transferred to Dallas County. In August, 1966, after Customs' suit against the bank had been transferred, the District Court of Lubbock County severed the cause as to Lyles and made final the interlocutory judgment rendered against him on March 12, 1965. On February 13, 1968, Texas Bank filed a third party claim against the Gentrys and Gentry Construction. Gentry's plea of privilege to the bank's third party claim, filed in Dallas County, and their plea of privilege, filed in answer to Custom Leasing's suit, filed in Lubbock County, have been sustained. These two suits against defendants, George W. Gentry, Alma Gentry, and Gentry Construction Company, are still pending in Midland County. This appeal involves only the suit filed by Custom Leasing against Texas Bank & Trust.

The trial court entered a judgment in this portion of the suit in favor of Custom Leasing for $11,000. Both the bank and Custom Leasing perfected their appeals to the court of civil appeals. That court sustained the bank's plea of election of remedies and reversed and rendered the trial court judgment. The court held that Custom Leasing by taking judgment against Lyles alone for the entire amount of the lease contracts abandoned and waived any right which it might have had to pursue its claim against the bank. The correctness of that holding is the principal question before us.

An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it. Ward v. Green, 88 Tex. 177, 30 S.W. 864 (1895); Norris v. Wilkens, 3 S.W.2d 126 (Tex.Civ.App.1927, no writ); Seamans Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424 (1925). In 28 C.J. S. Election of Remedies § 8 (p. 1073), it is stated: "Where remedies pursued against different persons are repugnant and inconsistent, the election of one bars the other, but concurrent and consistent remedies may all be pursued until satisfaction is had. The bar of an election does not apply to the assertion of distinct causes of action against different persons arising out of independent transactions with such persons." See also, Bankers Life Co. v. John E. Quarles Co., Tex.Civ.App., 88 S. W.2d 613, affirmed, 131 Tex. 65, 112 S.W. 2d 1044 (1938); Alexander v. Harris, 254 S.W. 146 (Tex.Civ.App.1923, writ ref'd). It has been said that the doctrine of election of remedies is not a favorite of equity and that its scope should not be extended. Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377, 393 (1945); Liberty Mut. Ins. Co. v. First Nat. Bank In Dallas, 151 Tex. 12, 245 S.W.2d 237 (1951).

As heretofore indicated, Custom Leasing sued Lyles, the Gentrys, and Gentry Construction Co., upon the notes and lease agreements on January 19, 1965, and after proper service Custom took an interlocuto-

ry default judgment against Lyles on these notes and lease agreements on March 12, 1965. When Custom learned that the Gentrys denied executing all instruments involved in either the bank loan and mortgage, or the sale and lease-back transaction, it filed its first amended original petition and joined the bank as a defendant.

Custom's suit against Lyles and the Gentrys is based upon the notes and lease agreement executed by Lyles and Custom. The suit here against the bank is one in tort, that is, the alleged false representation for the release of a chattel mortgage. They are two very distinct causes of action against two different parties. There is nothing inconsistent in suing the perpetrator of the forgery, and the bank which the jury found had falsely represented that Gentry Construction Co. owed the bank $19,089, pursuant to a promissory note secured by a chattel mortgage. Custom Leasing was not put to an election affecting the bank because the remedies against Lyles and the Gentrys on one hand and the bank on the other are not inconsistent or repugnant. Johanning v. Moore, 331 S.W. 2d 74 (Tex.Civ.App.1959, writ dism'd).

Having decided that the judgment of the court of civil appeals cannot be affirmed, we examine other points presented by respondent as appellant in the intermediate court to determine if any of these warrant an affirmance on a ground which was not considered by the intermediate court. McKelvy v. Barber, 381 S.W.2d 59 (Tex. 1964). There were numerous points of error presented in the court of civil appeals which were rendered immaterial under its holding, and some of those points challenge the sufficiency of the evidence to support the findings of the jury in answer to special issues. Since this Court has no jurisdiction to determine these points of error, we remand the cause to the court of civil appeals to pass on all points. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S. W.2d 172 (1951); Ritchie v. American Surety Co. of New York, 145 Tex. 422, 198

S.W.2d 85 (1947); Pruitt v. Republic Bankers Life Insurance Company, 491 S. W.2d 109 (Tex.1973).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court.