Vivian **ALVAREZ**, Appellant,

v.

The **EMPLOYERS' FIRE INSURANCE COMPANY**, Appellee.

No. 8600.

Court of Civil Appeals of Texas, Amarillo.

Dec. 8, 1975.

Rehearing Denied Jan. 5, 1976.

Edwards, Smith & Associates, Carson Smith, Amarillo, for appellant.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, R. A. Wilson, Amarillo, for appellee.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

Our opinion of 20 October 1975 is withdrawn and, in lieu thereof, this opinion is substituted.

During the jury trial of Vivian Alvarez's suit to set aside a compromise agreement in settlement of her workmen's compensation claim, the court directed a verdict against her.[1] Direction of a verdict was proper because she failed to produce evidence raising all of the issues of legal fraud. Affirmed.

In March of 1972,[2] Vivian Alvarez suffered a back injury in the course of her employment with Holiday Inn of Amarillo whose workmen's compensation insurance carrier was The Employers' Fire Insurance Company. After Mrs. Alvarez went to and was treated by a doctor, she was directed by the carrier to Dr. Ralph Citron for examination and treatment. His May 30 report for the carrier was that her injury was a moderate lordosis and bilateral muscle spasm in the lumbar spine, and his impression was that she had a mild disc herniation which had not responded to treatment to the extent to permit her to return to work. Prescribing that she wear a spinal brace and take muscle relaxants, Dr. Citron predicted that she would be able to return to work. On June 20 Dr. Citron made the report that he had released Mrs. Alvarez to return to work. An August 18 report, noting that Mrs. Alvarez still complains of pain and tiredness in her back but that she is working at her original job, conveyed Dr.

1. A previous judgment overruling the insurance carrier's plea of privilege was reversed and the cause was remanded for a full development of the venue issues. *Employers' Fire Insurance Company v. Alvarez*, 511 S.W.2d 400 (Tex.Civ.App.—Amarillo 1974, no writ).

2. All dates are in the year 1972 unless otherwise specified.

Citron's belief that Mrs. Alvarez has a chronic lumbrosacral strain for which no further treatment is necessary, and his opinion that she has a five percent permanent partial disability. By his September 25 letter, Dr. Citron reported that his September 12 examination of Mrs. Alvarez showed no change from her previous condition, that she has been working and wearing her brace, and that she has a five percent permanent partial disability or loss of earning capacity. He contemplated no further treatment.

A copy of this letter was sent to Thomas V. Priolo, an attorney consulted by Mrs. Alvarez in June. She represented to him that she was not able to work. At the trial she testified that she had tried to return to work, but was able to work only three or four days.

At a September meeting of Mr. Priolo, a representative of the carrier and an Industrial Accident Board examiner, it was agreed that the medical information was not sufficient for a final determination. Mr. Priolo arranged for Mrs. Alvarez to be examined by Dr. Richard Chandler. In his November 21 report to Mr. Priolo, Dr. Chandler detailed his October 12 examination of Mrs. Alvarez and her November 7 hospitalization. He stated his diagnosis of a compression fracture at the antero-superior aspect of lumbar 1 and lumbar 2, giving his prescribed course of treatment and calling for follow-up X-rays. In the opinion of Mr. Priolo, Dr. Chandler essentially confirmed what Dr. Citron had found and, after talking with Dr. Chandler, he did not deem the compression fracture found by Dr. Chandler to be serious.

After an exchange of medical information, Mr. Priolo entered into negotiations with the insurance carrier's representative. Although Mrs. Alvarez was representing that she was not able to work and Mr. Priolo was contending for a larger amount in settlement, the position of the carrier's representative was that $1,200 additional to the $744.32 already paid to Mrs. Alvarez and payment of her medical expenses was all the medical would support and all the carrier would authorize him to pay.

Mr. Priolo talked to Mrs. Alvarez about the settlement negotiations and explained to her the options or alternatives if the amount offered on behalf of the carrier was unacceptable. Even though her complaints of disability would have substantially exceeded a five percent disability, Mr. Priolo told Mrs. Alvarez that Dr. Citron is an expert whose opinions are respected, and "if he said 5%, she was probably going to get 5%" which, according to Mr. Priolo's estimate "would be right at $1,000."

On December 7, the compromise and settlement agreement was executed on the basis of the carrier's offer, and the medical was left open for one year for treatment by Dr. Citron only. Although Mr. Priolo thought it was prudent to have an independent evaluation by a physician other than Dr. Citron before he was willing to make a settlement, it was essentially Dr. Citron's "report" that he relied on, and he thinks Mrs. Alvarez relied on, in making the settlement.

Later on February 22, 1973, Mrs. Alvarez underwent surgery at the direction of Dr. Citron for the removal of a disc at the right L-4, L-5 interspace. Dr. Citron's immediate follow-up report related that she has a ten percent permanent partial loss of earning capacity.

Thereafter, Mrs. Alvarez instituted this suit to set aside the compromise and settlement agreement. Her pleaded grounds were that she was induced to settle her claim through the material medical misrepresentations of the insurance carrier's agent, Dr. Citron, and that the insurance carrier fraudulently devised a scheme or acquiesced in a design to settle her claim with full knowledge that her injuries were severe and disabling. At the conclusion of the evidence, the trial court directed a verdict for the carrier, rendering judgment that Mrs. Alvarez take nothing.

■ To escape the binding effect of the compromise and settlement agreement, it was necessary for Mrs. Alvarez to show that: (1) she has a meritorious claim for compensation in an amount greater than the amount paid, *Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 468 (1949); (2) Dr. Citron's medical representations were false, notwithstanding that he made them in good faith and believed them to be true; (3) she believed them to be true; and (4) she was materially induced by such belief to make the settlement. *Graves v. Hartford Accident & Indemnity Co.,* 138 Tex. 589, 161 S.W.2d 464, 466–67 (1942). The failure by Mrs. Alvarez to produce evidence raising an issue of fact on one or more of the essential elements of her cause of action based on fraud would entitle the carrier to a directed verdict. *Statham v. City of Tyler,* 257 S.W.2d 742, 744 (Tex.Civ.App.—Texarkana 1953, writ ref'd n. r. e.).

■ Mrs. Alvarez's testimony that she was not, and never would be, able to work as a result of her injury is prima facie evidence that she has a meritorious claim for more compensation than she settled for and that Dr. Citron's medical representations were false. There is, however, no evidence that Mrs. Alvarez believed Dr. Citron's representations were true or that she relied on their verity in agreeing to the settlement. She did not testify that she did; indeed, her never changing belief and her assertions to her attorney that she was not able to work are diametrical contradictions of the idea that she believed Dr. Citron's representations were true. While Mr. Priolo did state that it was Dr. Citron's report he essentially relied on, and believed that Mrs. Alvarez relied on, in making the settlement, he did not reference that testimony to a belief that the report was true. Rather, Mr. Priolo's testimony was referenced to his belief that, although the assertions of Mrs. Alvarez about her condition was contradictory of any opinion expressed by Dr. Citron, he could not hope to support more, or get any better results in front of a jury, than Dr. Citron's five percent rating. In short, the reliance was from the belief of insuperableness, instead of the truthfulness, of Dr. Citron's rating.

■ It long has been the rule in Texas that voluntary settlements are favored; and, even though the final result is different from that anticipated, a settlement will not be set aside on the ground of legal fraud if an element of fraud is missing. See *Houston & T. C. Ry. Co. v. McCarty,* 94 Tex. 298, 60 S.W. 429, 430 (1901), and *Thrower v. Brownlee,* 12 S.W.2d 184, 186 (Tex.Comm'n App.1929). Because Mrs. Alvarez failed to produce evidence that she believed in and materially relied on the truth of Dr. Citron's representations, the court properly directed a verdict.

The Employers' Fire Insurance Company's motion for rehearing is granted. Our judgment of 20 October 1975 is set aside. Vivian Alvarez's points of error are overruled.

The judgment is affirmed.