Janie P. BOCANEGRA, Petitioner,

v.

**AETNA LIFE INSURANCE COMPANY, Respondent.**

No. B–8077.

Supreme Court of Texas.

July 16, 1980.

Rehearing Denied Sept. 16, 1980.

Branton & Mendelsohn, Les Mendelsohn, Chrys A. Lambros and L. Wayne Scott, San Antonio, for petitioner.

Joe Meador, San Antonio, for respondent.

POPE, Justice.

Plaintiff, Janie Bocanegra, sued Aetna Life Insurance Company on a group medical and hospital policy and recovered judgment upon a jury finding that certain medical and hospital services she needed resulted from a non-occupational disease.[1] Previously Mrs. Bocanegra had filed with the Industrial Accident Board a claim, which she settled, for an occupational injury. The

court of civil appeals held the settlement was an election which barred her later suit. That court reversed the judgment of the trial court and rendered judgment for Aetna. 572 S.W.2d 355. We hold that Mrs. Bocanegra did not make an informed election that barred her in this action. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Mrs. Bocanegra began working for Clegg Company in 1965 as a book binder. Her work required her to lift and handle books. As she got out of bed one morning in April of 1975, she experienced a sharp pain in her lower back. She reported for work but did not tell her employer about her pain. On June 3, 1975, again on arising from bed, she had another severe pain, but still did not report any job-related injury. On June 29 the pain became so severe that she went to the emergency room of the Baptist Hospital. Her physician, Dr. Larry Miller, prescribed conservative treatment including two weeks in traction. He told Mrs. Bocanegra that she might have hurt her back at work. Failing to get any relief and after extensive tests, on August 11, she underwent surgery for a slipped disc. Dr. William Dossman performed the surgery. Mrs. Bocanegra never gave notice to her employer that she had sustained an occupational injury, but on August 18, after her operation, she filed with the Texas Industrial Accident Board her Notice of Injury or Occupational Disease and Claim for Compensation. In that notice she wrote, "I was lifting telephone books in the course and scope of my employment and injured my back and body generally." In her accompanying hardship affidavit, she swore, "I was hurt on the job on the above date while working for the above employer." On July 21, she filed a claim under the Aetna group policy on which she checked the box which

---

1. The court instructed the jury by using a part of the definition in the group policy:

 You are instructed that the term "NON-OCCUPATIONAL DISEASE" means a disease which does not arise, and which is not

caused or contributed to by, or as a consequence of, any disease which arises, out of or in the course of any employment or occupation for compensation or profit.

asked if the claim was based on an accident. She also wrote on that claim form that the accident occurred "At work by lifting and bending." On July 29, she filed a second claim with Aetna on which she checked "No" to the question whether her claim was based on an accident. She also filed a claim with American Security Life Insurance Company on September 13 in which she stated that the accident occurred at work while lifting and bending. On September 17, she filed a similar claim with Presidential Life Insurance Company which gave the same information.

On October 27, Mrs. Bocanegra settled her worker's compensation claim for a general injury for $12,000 which the compensation carrier paid. The settlement agreement was "solely for lost wages and future impaired earning capacity," and it expressly excluded any payment for past or future medical or hospital expenses, the items that are here in question.

Mrs. Bocanegra, after her surgery and the settlement of her claim for an occupational injury, commenced these proceedings against Aetna to recover the amount of her medical and hospital bills. She asserted, and the jury found, that the medical and hospital services resulted from a non-occupational injury. She supported this claim by her own testimony that she was not injured on the job but that she did not know that fact until after her operation. At that time Dr. Dossman, her surgeon, told her that her back problem was the result of a degenerative disc disease that pre-dated but lingered after the onset of the initial back pain. She denied that she at any time ever told her doctors that she had sustained an injury on the job. Dr. Dossman confirmed Mrs. Bocanegra's testimony and testified that, in his opinion, her disc trouble

was not related to her occupation. He testified: "About half of the time in this problem there is no known injury or cause of the problem, it just happens. About half of the time there is a history of some specific injury producing the problem." The court of civil appeals concluded that Mrs. Bocanegra's claim for an occupational injury was, as a matter of law, inconsistent with the state of facts upon which she later relied to obtain a judgment in her suit on the health policy that she had a non-occupational injury. The court rendered judgment that she take nothing.

The doctrine of election, although widely criticized,[2] survives in wide-ranging branches of the law that stretch from the widow's election in probate law to the choice in contract law between a suit for damages and one for rescission. *See* 5 Williston on Contracts §§ 683–688 (3d ed. Jaeger 1961). Election, an affirmative defense, has been held to bar remedies, rights, and inconsistent positions arising out of the same state of facts. 25 Am.Jur.2d *Election of Remedies* § 7 (1966); Annot., 116 A.L.R. 601, 602 (1938). The situations in which an election might arise are so variable that an all-inclusive definition has been elusive, and discussions of the doctrine often borrow terms that may also appropriately relate to other affirmative defenses. For that reason, election is often confused with or likened to judicial estoppel, equitable estoppel, ratification, waiver or satisfaction. Those doctrines sometimes do not reach a situation that equity and good conscience need to reach through the doctrine of election.

A judicial estoppel may arise when a question necessary for the determination of a prior adjudication is decided. It constitutes a bar to a redetermination of that issue in a different cause. *Benson v.*

---

**2.** It has been criticized because of its lack of any fixed legal underpinnings and called the following: a legal weed that judicial gardeners should root out, Hine, *Election of Remedies: A Criticism*, 26 Harv.L.Rev. 707, 719 (1913); a legal delusion, Note, *Election of Remedies: A Delusion?* 38 Colum.L.Rev. 292, 293 (1938); an anachronism, Fraser, *Election of Remedies: An Anachronism*, 29 Okla.L.Rev. 1 (1976); a problem child of the law, Merrem, *Election of Remedies*, 8 Sw.L.J. 109 (1954); and a remedy that has no independent viability, LaBay, *Election of Remedies: The California Basis*, 19 Hastings L.Rev. 1233, 1246 (1968).

*Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex. 1971); *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292 (1956); *Houston Terminal Land Co. v. Westergreen*, 119 Tex. 204, 27 S.W.2d 526 (1930). Equitable estoppel differs from each of the above defenses, because it requires some deception that is practiced upon a party who relies upon it to his prejudice. *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834 (Tex.1968); *Concord Oil Co. v. Alco Oil and Gas Corp.*, 387 S.W.2d 635 (Tex.1965); *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952). A ratification rests upon a manifestation of assent to confirm one's prior act or that of another. It may occur without any prior litigation and in the absence of any change of position by or prejudice to the other party. *Texas & Pac. Coal & Oil Co. v. Kirtley*, 288 S.W. 619 (Tex.Civ.App.—Eastland 1926, writ ref'd). Waiver, the voluntary relinquishment of a known right, is sometimes spoken of as intentional conduct inconsistent with the assertion of a known right. *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663, 667 (Tex.1977). Full satisfaction will bar a claim because the law will not permit double redress. *James and Company, Inc. v. Statham*, 558 S.W.2d 865 (Tex.1977); *McMillen v. Klingensmith*, 467 S.W.2d 193 (Tex.1971); *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935).

■ The single underlying principle of the election doctrine has not been found. Estoppel in some form, ratification and unjust enrichment have been suggested as the basic reasons for an election, and in many instances they suffice. *Schenck v. State Line Telephone Co.*, 238 N.Y. 308, 144 N.E. 592 (1924)· *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704 (Tex.Civ.App.—Dallas 1979, writ ref'd n. r. e.). The court of civil appeals in this case has, perhaps more soundly, held that inconsistency will bar an action in instances of manifest injustice. Even though the inconsistent position may not fit the mold of a better defined principle, an election will bar recovery when the inconsistency in the assertion of a remedy, right, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust.

A similar loosely defined but useful equitable doctrine is the constructive trust. It is unlike other trusts, but equity raised it up in the name of good conscience, fair dealing, honesty, and good morals. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960). "A constructive trust is the formula through which the conscience of equity finds expression." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919). Equity provides the idea of constructive trusts as a tool to "frustrate skullduggery," 4 R. Powell, Real Property § 593 (1949), even though that kind of a trust is also grounded upon elusive principles.[3] Such a trust is purely a creature of equity. Its form is practically without limit, and its existence depends upon the circumstances. *Simmons v. Wilson*, 216 S.W.2d 847, 849 (Tex.Civ.App.—Waco 1949, no writ).

■ The election doctrine, therefore, may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *See Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869 (Tex. 1973).

A number of seemingly inconsistent positions do not rise to the level of an election which will bar recovery. One may, for example, plead alternative and inconsistent facts without being barred. Rules 48 and 51, Texas Rules of Civil Procedure, authorize such procedures. One who pleads alter-

---

3. "Without much conscious purpose or plan we have created this shambling creature. It is time to fence it in." J. Dawson, Unjust Enrichment 26 (1951). "It thus constitutes a fenceless field with hazy boundaries." 4 R. Powell, Real Property § 593, 565 (1949).

native or inconsistent facts or remedies against two or more parties may settle with one of them on the basis of one remedy or state of facts and still recover a judgment against the others based on the pleaded alternative or inconsistent remedies or facts. By analogy, an insurer's voluntary payment to a worker of weekly compensation benefits will not bar the defense that there was no accidental injury. *Lopez v. Associated Employers Ins. Co.*, 330 S.W.2d 522 (Tex.Civ.App.—San Antonio 1959, writ ref'd). *See also Southern Underwriters v. Schoolcraft*, 138 Tex. 323, 158 S.W.2d 991 (1942). The basis for the holding was to encourage prompt payments of compensation following injury. A holding that the payments were inconsistent with a denial of an accidental injury or that they constituted an admission of an injury would discourage prompt payment of weekly benefits. *Hartford Accident and Indemnity Co. v. Hale*, 400 S.W.2d 310, 312–13 (Tex.1966).

■ There is no election, that is, no inconsistency in choices, when one first unsuccessfully pursues a right or remedy which proves unfounded and then pursues the one that is allowed. *Poe v. Continental Oil & Cotton Co.*, 231 S.W. 717 (Tex.Com. App.1921, holding approved); *Schwartz v. National Loan & Investment Co.*, 133 S.W.2d 133 (Tex.Civ.App.—Dallas 1939, writ ref'd); *Breland v. Guaranty Building & Loan Co.*, 119 S.W.2d 690 (Tex.Civ.App.—Fort Worth 1938, writ ref'd); 25 Am.Jur.2d, *Election of Remedies* § 9. One may assert concurrent but inconsistent remedies or distinct causes of action against different persons arising out of independent transactions. *Shriro Corp. v. Ward*, 570 S.W.2d 395 (Tex.1978); *American Savings & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588–89 (Tex.1975); *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869, 871 (Tex.1973); *Liberty Mutual Ins. Co. v. First National Bank in Dallas*, 151 Tex. 12, 245 S.W.2d 237 (1951).

■ One's choice between inconsistent remedies, rights or states of facts does not amount to an election which will bar further action unless the choice is made with a full and clear understanding of the problem, facts, and remedies essential to the exercise of an intelligent choice. *Leonard v. Hare*, 161 Tex. 28, 336 S.W.2d 619 (1960); *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 379 (1945); *Loveless v. Texas Employers Ins. Ass'n*, 269 S.W.2d 454 (Tex. Civ.App.—Austin 1954, writ ref'd); 5 Williston on Contracts § 685 (3d ed. Jaeger 1961); Merrem, *Election of Remedies in Texas*, 8 Sw.L.J. 109, 110 (1954); 25 Am. Jur.2d, *Election of Remedies* § 21 (1966). An exception to that rule exists when the choice of a course of action, though made in ignorance of the facts, will cause harm to an innocent party. *Slay v. Burnett Trust, supra* at 394; *Employers' Indemnity Corp. v. Felter*, 277 S.W. 376 (Tex.Com.App.1925).

■ This present case aptly illustrates the reason that election should not bar a suit when a previous course of action or a settlement for less than the claim was grounded upon uncertain and undetermined facts. The definition of an occupational disease contained in section 20 of article 8306 is itself complex and difficult:

Whenever the term "Occupational Disease" is used in the Workmen's Compensation Laws of this State, such term shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom. An "Occupational Disease" shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; provided, that the date of the cumulative injury shall be the date disability was caused thereby. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident to an

"Occupational Disease" or "Injury" as defined in this section.

Under that definition, Mrs. Bocanegra's injury may have been an occupational one which was compensable, it may have been an "ordinary disease of life" which was not, or it may have been both. Tex.Rev.Civ. Stat.Ann. art. 8306, § 22. Many diseases, do not fit neatly within an either/or distribution, and the dispute whether such a condition is compensable or not is an ongoing one. Uncertainty in many complex areas of medicine and law is more the rule than the exception. It would be a harsh rule that charges a layman with knowledge of medical causes when, as in this case, physicians and lawyers do not know them. Mrs. Bocanegra's first physician, Dr. Miller, was of the opinion that the lifting and bending at the work bench was the cause of an occupational injury. Dr. Dossman advised her to the contrary after the surgery. The settlement agreement that Mrs. Bocanegra made with her compensation carrier showed that the carrier disputed liability, the period of time lost for the claimed occupational disease, and past and future medical expenses for which the carrier paid nothing. Mrs. Bocanegra lacked the requisite knowledge to bind her to an informed election.

 Some of the Texas decisions cannot be harmonized, and they need discussion. *Seamans Oil Co. v. Guy*, 115 Tex. 93, 276 S.W. 424 (1925), while reaching a correct result, intermingles the doctrines of election, estoppel, and satisfaction. J. H. Guy and wife, lessors of an oil and mineral lease instituted suit against Seamans Oil Company and Empire Gas & Fuel Company for the cancellation of the lease. During the pendency of the suit against them, Seamans and Empire Gas could exercise none of the rights accorded by the lease, but they kept the lease alive by tendering timely delay rental payments which the Guys refused to accept. Just before the lease expired by its own terms, the Guys adopted an inconsistent posture, dismissed their suit for cancellation and drew a check on the bank for the delay rentals that they had previously rejected. By that time, the Guys' suit had fully accomplished its purpose to defeat any drilling or other operations. The court held that "[i]t would be shocking to a sense of justice to hold that the Guys could destroy the value of the leasehold by the claim that it did not exist and at the same time collect delay rentals upon the basis that it was a valid lease." The opinion, though primarily grounded upon an election, is an instance of full satisfaction which the Guys had already achieved through their lawsuit. Even though it was dismissed, the suit had fully accomplished the same purpose that a favorable judgment would have achieved. *Seamans* quotes from 10 Ruling Case Law 703, 704:

If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. And where the right in the subsequent suit is inconsistent with that set up in the former suit, as distinguished from a merely inconsistent remedy, the party is estopped though the former suit may not have proceeded to judgment. But where the inconsistency is in the remedies it is generally considered that there is no estoppel where the former suit was dismissed without trial or before judgment.

The quotation is an early statement of the election doctrine and contains errors. An election may arise short of one's prosecution of a claim to final judgment. One may also receive something by way of settlement, even of substantial value, under an uncertain claim without making an election which bars recovery against another person. The quotation may be illustrative of some situations which might rise to the level of an election, but it is an unreliable statement of a general rule, and we reject it.

*Lomas and Nettleton Co. v. Huckabee*, 58 S.W.2d 863 (Tex.1977) relied upon *Seamans*,

*supra,* in holding there was an election. The Huckabees first asserted in their lawsuit that two insurance companies had insured the Huckabees' real and personal property that was destroyed in a fire. The Huckabees, upon the strength of that state of facts, recovered in a settlement one hundred percent of their claim for the destroyed realty and eighty percent of their claim for the destroyed personalty. Their lawsuit was then dismissed with prejudice. After succeeding with their claim that their property was insured, they adopted the inconsistent position that it was not insured and sued their agent for his neglect. We held that the Huckabees, after successfully asserting their claim on one state of facts and receiving almost the whole of their claim, would not be permitted a second recovery against another party by denying the truth of that state of facts. The case was correctly decided, but the quotation from *Seamans,* as discussed above, includes errors concerning the election doctrine. *Cf. Shriro Corp. v. Ward,* 570 S.W.2d 395 (Tex. 1978).

The court of civil appeals in *Metroflight, Inc. v. Shaffer,* 581 S.W.2d 704 (Tex.Civ. App.—Dallas 1979, writ ref'd n. r. e.), followed but criticized *Huckabee.* As is characteristic of this whole area of law, the opinion mixes equitable estoppel, ratification, satisfaction, judicial estoppel, unjust enrichment and other matters. Perhaps the underlying flaw in the analysis of the court of civil appeals in *Metroflight* is its basic assumption. Metroflight had sued in federal court claiming that it had insurance coverage for losses arising out of a plane crash. The defendant insurer denied coverage but later paid Metroflight eighty percent of the total claim. Metroflight, after dismissing its action in which it asserted insurance coverage, proceeded with a suit against its agent for damages on the basis of the inconsistent fact that the plane was not insured. The trial court held that Metroflight was barred by election. The court of civil appeals affirmed but criticized the *Huckabee* case, which it felt bound to fol-

low. The *Metroflight* court assumed that Metroflight had dismissed its federal court claim asserting insurance coverage because pre-trial discovery had shown that claim to be groundless and certain to fail. This assumption, twice stated, is wrong. The insurer's settlement for eighty percent of the very large coverage-based claim shows the validity and strength of the claim that insurance actually existed.

In *Seamans, Huckabee,* and *Metroflight,* the respective plaintiffs realized most or all of what they claimed by asserting facts about which they were certain. By contrast, however, the fact upon which Mrs. Bocanegra relied in settling with her compensation carrier, the nature of her complex disease, was highly uncertain which was evidenced by the small settlement which included none of her hospital and medical bills.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

CAMPBELL, J., concurring.

GARWOOD, J., not sitting.

CAMPBELL, Justice, concurring.

We should not attempt to draw an artificial distinction between this case and the decisions in *Huckabee* and *Metroflight* merely to avoid an admission that those decisions were erroneous. The claims in those cases were as uncertain as the claims in this case. Except for uncertainty there would obviously have been no compromise and settlement. This decision establishes a rule of law that whether a settlement with a defendant will be deemed an election barring suit against another defendant, upon facts inconsistent with those asserted to obtain the settlement, will be ultimately determined by this Court's opinion as to the degree of uncertainty as to the facts inconsistently asserted.

*Seamans Oil Co. v. Guy* was not decided upon the law of elections but was decided

upon a clear-cut equitable estoppel. This Court in *Huckabee* followed a dictum quotation from Ruling Case Law which is incompatible with recognized principles of Texas procedure and policy. A party may plead and prove totally inconsistent claims and defenses in Texas. *Deal v. Madison*, 576 S.W.2d 409 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.); Rule 48, T.R.C.P.

Settlement agreements are highly favored in the law because they are a means of amicably resolving doubts and preventing lawsuits. *Miller v. Republic National Life Insurance Company*, 559 F.2d 426 (5th Cir. 1977); *Republic National Life Insurance Company v. Sussman*, 564 F.2d 98 (5th Cir. 1977); *Alvarez v. Employers' Fire Insurance Company*, 531 S.W.2d 218 (Tex.Civ. App.—Amarillo 1975, no writ)· *Coastal States Gas Producing Company v. Apollo Industrial X-ray, Inc.*, 467 S.W.2d 239 (Tex. Civ.App.—Corpus Christi 1971, no writ)· *Fidelity-Southern Fire Insurance Company v. Whitman*, 422 S.W.2d 552 (Tex.Civ.App. —Houston [14th Dist.] 1967, writ ref'd n. r. e.); *State v. Cook*, 407 S.W.2d 876 (Tex.Civ. App.—Waco 1966, writ ref'd n. r. e.); *Pearce v. Texas Employers Insurance Association*, 403 S.W.2d 493 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.) motion for rehearing overruled per curiam, 412 S.W.2d 647 (Tex.1967).

Proper regard for these principles compels a conclusion that a mere compromise and settlement of a claim asserting facts inconsistent to those asserted in a claim against a different defendant should not bar the latter claim. The contrary conclusion, in effect, compels a party to proceed to final judgment against two or more defendants instead of settling with a defendant who is desirous of settlement. This would not diminish assertion of inconsistent claims but would merely diminish settlements.

We should concede our error and expressly overrule *Huckabee* and hold there is no election until final judgment on the merits.