Kathleen RABJOHNS, et vir.

v.

HOSPITAL CORPORATION
INTERNATIONAL, LTD.

Deborah FERGUSON

v.

HOSPITAL CORPORATION
INTERNATIONAL, LTD.

Civ. A. Nos. S–82–96–CA, S–82–186–CA.

United States District Court,
E.D. Texas,
Sherman Division.

Oct. 19, 1983.

W. James Kronzer, Houston, Tex., for plaintiffs.

E.D. Vickery, Royston, Rayzor, Vickery & Williams, Houston, Tex., for defendant.

## MEMORANDUM ORDER

JOE J. FISHER, District Judge.

The Defendant in these consolidated cases moved for dismissal pursuant to Fed. R.Civ.P. 12(b)(6), arguing that the Plaintiffs failed to state a claim for which relief can be granted. A hearing was held and the court has carefully reviewed the affidavits, exhibits, pleadings, and briefs filed by the parties. The motions are herein treated as motions for summary judgment as provided in Rule 56.

Deborah Ferguson and Kathleen Rabjohns worked as nurses for Hospital Corporation International, Ltd. (HCI) when injured in a work-related vehicle collision in Saudi Arabia. Both apparently sought or received payment of medical expenses and other compensation from their employer or its insurer. Thereafter, the Plaintiffs sued their employer for damages.

The Defendant insists that a valid worker's compensation insurance policy was in force, not only when the women were injured, but at the time of their employment, as well. HCI argues that the Plaintiffs are foreclosed from bringing the actions by the exclusive remedy provision of the Texas Worker's Compensation Law (the Act), Tex.Rev.Civ.Stat.Ann. art. 8306 sec. 3 (Vernon 1967 & Supp.1982). Alternatively, it suggests that the Plaintiffs, by requesting or receiving payments from their employer or its insurer, have made binding "elections of remedies" which preclude recovery in the actions before this court.

The court perceives the following relevant facts to be undisputed: (1) that the Plaintiffs suffered injuries that would ordinarily be covered by a valid worker's compensation policy; (2) that the Defendant was a named-insured under an insurance contract in force at the time of the Plaintiffs' employment and injury; (3) that the Plaintiffs had neither constructive nor actual notice prior to their being injured that their employer was a "subscriber" under the Act; (4) that the Defendant notified the Plaintiffs before they filed suit that its insurance policy provided for "voluntary benefits" under either California law, if acceptable to Plaintiffs, or under Texas law "if their employer is legally liable thereunder;" (5) that the Plaintiffs received temporary payments from their employer; and (6) that the Plaintiffs did not pursue their claims before the Industrial Accident Board beyond a pre-hearing conference.

To rule in favor of the Defendant, the court must make the following conclusions: (1) that the Defendant was insured pursuant to a valid worker's compensation policy at the time of the Plaintiffs' injury; **and** either (2) the Plaintiffs made a binding "election of remedies," choosing worker's compensation benefits over a common law remedy; **or** (3) that (a) the Defendant gave the Plaintiffs notice, actual or constructive, that it was a "subscriber" as required by law; **and** (b) the Plaintiffs waived their common law rights as provided by the Act.

## ELECTION OF REMEDIES

It is the opinion of the court that the Plaintiffs have not made an election of remedies. Plaintiffs concede they sought and accepted payments from their employer after their injury. They went so far as to attend a pre-hearing conference before the Industrial Accident Board. It appears, however, that no further action has been taken as would make "final" an award of worker's compensation. **See** *Grimes v. Jalco, Inc.*, 630 S.W.2d 282 (Tex.Civ.App. 1981—writ ref'd n.r.e.). **See also** *Bocanegra v. Aetna Insurance Company*, 605 S.W.2d 848 (Tex.1980). The court concludes, therefore, that no election was made by the Plaintiffs sufficient to foreclose the common law remedies they seek.

### EFFECT OF POST-INJURY NOTICE

■ The court assumes, *arguendo*, that the Defendant was a "subscriber" at the time of the Plaintiffs' contract of hire. The Act requires that "Whenever any employer ... becomes a subscriber ... he shall immediately notify the board of such fact ..." Tex.Rev.Civ.Stat.Ann. art. 8308 sec. 18a (Vernon's 1967 & Supp.1982). Upon the receipt by the Industrial Accident Board of that notice, all employees of the subscriber are "conclusively deemed to have notice" that their employer has provided for compensation under the Act. *Id.* art. 8306 sec. 3c. HCI did not notify the board as required. The Plaintiffs, therefore, had no constructive notice of compensation coverage.

The Act requires every subscriber, after receiving a policy, to give notice "to all persons with whom he is about to enter into a contract of hire that he has provided for payment of compensation for injuries ..." *Id.* art. 8308 sec. 20. HCI gave no such notice to the Plaintiffs.

■ The Defendant actually notified the Plaintiffs of its insurance coverage several months after their injury. The Plaintiffs had by then hired counsel who were negotiating with the Defendant. Inasmuch as the Plaintiffs failed to claim their rights to a common law remedy within five days of that notice, Defendant argues, they "waived" them under the Act. *Id.* art. 8306 sec. 3a.

At first glance, this is an appealing argument. Moreover, the limited case law near the point seems to support it. **See, e.g.,** *Bailey v. Texas Indemnity Insurance Company,* 14 S.W.2d 798 (Tex.Comm.App. 1929—no writ). According to the Act, however, notice **after** hiring can result in waiver only when the employer was not a "subscriber" at the time of hire. In this case, the employer became a subscriber **before,** not after, the contract of hire was made. The late notice did not, therefore, force the Plaintiffs to claim their rights of action at common law or waive them.

If the Plaintiffs waived their rights through silence, it was by failing to claim their rights "at the time of [their] contract of hire." The court is reluctant to conclude, however, that the failure of the Plaintiffs to claim their rights at the time of hire resulted in waiver for the simple reason they had no notice then that HCI was a "subscriber."

Both waiver provisions of section 3a assume, the court believes, that the employer gave notice of subscription—actual or constructive—immediately upon becoming a "subscriber" and upon the Plaintiffs' being hired. This is the employer's duty under the law. Tex.Rev.Civ.Stat.Ann. art. 8308 sec. 18a.—20 (Vernon's 1967 & Supp.1982). Depriving a worker of his right to a common law remedy is a harsh measure. The court believes the law allows it only under strictly specified conditions: when the employee fails to claim his right after the employer gives him notice consistent with the law.

■ The employer's mere failure to timely notify new employees should not necessarily and forever deny it "subscriber" status *vis a vis* the unnotified employees. Had the post-hiring notice been given **before** the injuries occurred, for instance, the Plaintiffs might arguably have been required to claim their rights or lose them. Before the injury happened, no harm had been done. The employer could not fairly be accused of speculating at the expense of its employees simply for its neglect to give notice.

The Act, however, imposed duties, as well as benefits, upon employers. It clearly does not contemplate allowing the employer to remain silent about compensation coverage until after assessing the extent of its workers' injuries and its own liability. The employer cannot fairly claim the primary benefit conferred by the Act—exclusivity of remedy—when it ignored its duty of notice until after the injuries occurred. To allow otherwise weakens the system of incentives and economic tradeoffs of the Act.

As to its employees, the employer acquired "subscriber" status only after meet-

ing its statutory obligations. **See** *Kampmann v. Cross*, 194 S.W. 437 (Tex.Civ.App. 1917—writ ref'd) (absent mandatory notice to employee, employer is not subscriber); *Consumer's Gas & Fuel Co. v. Erwin*, 243 S.W. 500 (Tex.Civ.App.1922—writ ref'd) (no notice of subscriber status prior to injury); *Rice v. Garrett*, 194 S.W. 667 (Tex.Civ.App. 1917—writ ref'd) (notice after injury no bar to common law action). The Defendant was simply not a "subscriber" as to the Plaintiffs at the time of their injury. Just as buying a valid worker's compensation policy after the injury should not create *ex post facto* a relationship of "subscriber employer" and employee at the time of injury, so with post-injury notice.

The conclusion that HCI was not in a "subscriber employer" relation to the Plaintiffs upon their injury necessarily affects the Defendant's waiver argument. Moreover, the waiver issue is crucial to its motions. Waiver can occur in several ways. The employee can expressly waive his common law right of action at any time. And he can lose that right by acquiescence before his claim arises. But once he is injured, the employee has a specific, not merely a future and indefinite, cause of action. His right has vested; the employer is altogether without power to deprive him of it.

The Defendant cites *Bailey v. Texas Indemnity Insurance Co.*, 14 S.W.2d 798 (Tex.Comm.App.1929—no writ) as authority to the contrary. Granted, there is *dictum* in *Bailey* that mere failure to decline compensation benefits within five days of post-accident notice of coverage would eliminate the employee's right to a common law recovery. The holding of *Bailey*, however, is that failure of the employer to give notice of compensation coverage excuses the employee from presenting his compensation claim until notice has been given. Absent the employee's declaration that he would refuse compensation benefits, his right to compensation cannot be destroyed by his employer's failure to give notice that it exists. As for the *dictum* in the *Bailey* opinion, the court believes that it simply expresses an incorrect view of the law.

In reaching its conclusion, the court considered the Act as a whole, its purpose and operation, and the balancing of interests thereunder. By waiting until after the employees were injured to notify them, the employer lost its power to strip them of their rights, already accrued, to a common law cause of action.

## IS "VOLUNTARY" WORKER'S COMPENSATION VALID WORKER'S COMPENSATION?

■ The Defendant claims that it was insured pursuant to two policies: that which paid temporary benefits to the Plaintiffs, the National Union policy; and another which paid no money and actually denied coverage and liability, the Ideal Mutual policy. Not surprisingly, the Plaintiffs argue that neither policy complies with the Act.

Although all the details of the latter policy are not in the record, the court believes, based on the information presented, that the Ideal Mutual policy did not cover the activities of HCI in Saudi Arabia. First, while the policy lists some 90 U.S. workplaces, it omits mention of the Saudi site. Second, the policy enumerates specific entities and divisions of Hospital Corporation of America, Inc. as named insureds, yet fails to name HCI. Third, an agent of Ideal Mutual notified the Industrial Accident Board that the Defendant was not insured thereunder and that Ideal Mutual denied all liability thereto. Fourth, the policy excludes coverage if the Defendant has, "under the workmen's compensation law, other insurance ... "

The National Union policy provides "other insurance" that is at least partially "under the workmen's compensation law" of California, if not Texas. That suggests that the exclusion clause is effective in this case. In light of that and the other factors noted, the court believes that the Ideal Mutual policy did not and was not intended to cover the Plaintiffs at the time and place of their injury. The following discussion, therefore, relates only to the National Un-

ion policy, which did cover the Saudi workplace.

Although the policy insuring HCI included a "Foreign Workmen's Compensation and Employer Liability Endorsement," it purports to provide "Voluntary Workmen's Compensation." Section 3 of Endorsement. The court realizes that subtitles alone are not dispositive of the policy contents or effect. Moreover, the court notes that all worker's compensation is "voluntary," in that an employer is not required to provide it at all. Once the employer does so, however, the coverage thereafter is necessarily "involuntary." Payment of compensation to injured workers must be unconditional, mandatory, anything but "voluntary." Only the statutory exceptions excuse nonpayment under a valid worker's compensation policy. See, e.g., Tex.Rev.Civ.Stat.Ann. art. 8307 sec. 4 (Vernon's 1967 & Supp.1982); *Id.* art. 8309 sec. 1. In short, buying a valid worker's compensation policy is "voluntary;" making payments thereunder must be "involuntary."

The policy provided by HCI appears, however, to be voluntary in both respects. Each clause describing benefits thereunder refers to "voluntary payments." Generally, the policy commits the insurer to "pay voluntarily" the amount it "would have been obligated to pay ... under the workmen's compensation law of [various states] ... if such law were applicable ..." The phrase suggests, but does not entail, the creation of a valid policy. Other provisions of the policy, however, indicate the contrary.

For instance, consistent with the "voluntary" designation of the insurance is the policy provision for unilateral termination of benefits. Section 3(b)(7) of the Endorsement. "Any claim, suit, or demand made or prosecuted against the insured or the [insurer] for damages ..." allows the insurer to stop making "voluntary payments." The insured can "request that the [insurer] refuse to offer or continue making such payments ..." Moreover, in the event that "voluntary payments are not made or are discontinued ..." the insurer will pay only "if it is established that the insured or the [insurer] is legally liable under the provisions of the workmen's compensation law ..." Section 4 of the Endorsement.

In other words, the employer or the insurer can withhold payments from an injured employee, forcing him to sue for relief under the insurance contract. In contrast, the Act makes entitlement to benefits absolute. It provides that he who "sustains an injury in the course of his employment ... shall be paid compensation ... if his employer is a subscriber at the time of the injury." Tex.Rev.Civ.Stat.Ann. art. 8306 sec. 3b (Vernon's 1967 & Supp. 1982).

By reserving the power to refuse or stop compensation payments to an injured employee, the defendant and its insurer created a truly "voluntary" policy. It allows the employer to evaluate his damage and liability exposure following an employee injury and then decide whether to make "voluntary payments" or not. When the liability is clear and the damages extensive, as the Plaintiffs claim to be the case here, the employer can tender the "voluntary payments" and seek shelter in the exclusive remedy provision of the Act. In the situation where liability is nil and damages are high, it can request the insurer make no payment. The Defendant has the best of both worlds. The Plaintiffs have the worst: relegated to meagre compensation benefits when the employer is culpable, but left without insurance when it is without fault.

Another provision of the policy troubles the court. Section 3(b)(4) establishes an extra-legal "condition precedent" to any "voluntary payment" by the insurer: the employee must not only execute a "full legal release," but must "execute an assignment ... of any right of action ... against any person ... which is or may be liable for such injuries." It gives the insurer full power and discretion to proceed with, settle, or ignore the third party claims of the employee. This requirement

goes far beyond the subrogation right given by the Act. See Tex.Rev.Civ.Stat.Ann. art. 8307 sec. 6a (Vernon's 1967 & Supp. 1982).

The court concludes that the policy created only a contractual relationship for the benefit of the employees of HCI. Although the benefits under the policy were to be measured by the workmen's compensation laws of various states, the parties were not otherwise regulated thereby. See, e.g., *Travelers Insurance Co. v. Brown*, 402 S.W.2d 500 (Tex.1966); *Collier v. Allstate Insurance Co.*, 395 F.2d 719 (5th Cir.1968); *Employers Mutual Casualty Co. v. Poorman*, 428 S.W.2d 698 (Tex. Civ.App.1968—writ ref'd n.r.e.). Had the employer intended to provide genuine worker's compensation coverage for its employees, it had but to purchase a straightforward worker's compensation policy uncluttered with references to unilateral voluntarism.

It is the opinion of the court that the policy departs too far from the letter and spirit of the Act to be called a valid worker's compensation policy thereunder. It specifies unreasonable conditions for making "voluntary payments" and leaves the employer with too much control over the making of payments after those conditions have been met. At best, the policy is ambiguous, if not equivocal. Since the policy is invalid to make HCI a "subscriber" under the Act, the Defendant is not, therefore, entitled to the exclusive remedy protection of the Act.

### CONCLUSION

For the reasons explained above, it is the opinion of the court that the insurance policy in which HCI was a named insured does not constitute a valid worker's compensation policy under the Act. It is the further opinion of the court that no elections of remedies were made by the Plaintiffs with respect to the payments they received from their employer or its insurer. Moreover, the court concludes that even had the policy been valid and HCI a "subscriber," its giving post-injury notice to the Plaintiffs

could not deprive them of their vested rights to bring a common law or statutory cause of action for damages against the Defendant. It is, therefore

ORDERED, ADJUDGED, and DECREED that the motions of the Defendant, HOSPITAL CORPORATION INTERNATIONAL, LTD., be and are hereby in all things DENIED.