**The ALLSTATE INSURANCE CO., Appellant,**

v.

**Rebecca PEREZ, Appellee.**

**No. 13–89–088–CV.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 11, 1990.

John Milano, Jr., Aimee L. Kolze, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellant.

David McQuade Leibowitz, San Antonio, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Rebecca Perez was injured while at work and denied worker's compensation benefits for part of her injuries. By two points of error, The Allstate Insurance Company (Allstate), the worker's compensation carrier, appeals a judgment in favor of Perez on the ground that Perez elected her remedy when she filed a claim with her group insurance carrier and on the ground of insufficiency of the evidence. We affirm the judgment of the trial court.

## I. ELECTION OF REMEDIES

Perez was injured at work when she dropped a Video Cassette Recorder (VCR) on her foot. Initially, she was treated for a foot injury by her employer's doctor and received worker's compensation benefits for this injury. Within several days, however, she began to have neck pain and sought medical attention for her neck.

Believing her neck injury to be related to her initial accident, she applied for worker's compensation benefits for her neck and was denied on the grounds that her injury was not work-related. She was instructed to apply for benefits through her group insurance carrier who then, in turn, told her that her injury was work-related and that she should apply for benefits through her worker's compensation carrier. She did, and Allstate re-iterated that her neck injury was not work-related. Perez re-submitted the medical expenses for her neck to her group insurance carrier and designated her injury as nonwork-related. She explained that she designated her injury as nonwork-related because she needed surgery and she had been turned down by Allstate. The expenses were then paid.

Evidence regarding the difference between worker's compensation and group insurance, and Perez's application for group insurance for her neck was introduced at trial. Perez objected to the evidence to the extent that it applied to the affirmative defense of "election of remedies." The evidence was admitted as relevant to other issues in the case. Over the objection of Perez, the court submitted two jury issues regarding group insurance benefits which, according to Allstate, established a defense of "election of remedies."

Allstate contended that Perez was precluded from worker's compensation benefits because she had chosen to receive group insurance benefits.

By its first point of error, Allstate contends that the trial court erred in rendering judgment in favor of Perez under the Worker's Compensation statute for the reason that Perez made an election of remedies when she applied for and received group medical insurance benefits. Allstate argues that the jury's answers to the special issues regarding group health insurance benefits were improperly disregarded by the judge when rendering the verdict.

Allstate further argues that the issue of "election of remedies" was tried by consent and that a trial amendment regarding that issue was requested. At trial, Allstate requested that, in the event that the trial judge did not think Allstate's pleading was sufficient to allow the submission of the two issues on group insurance, it be allowed to make a trial amendment such that the issues could be submitted. The trial judge allowed the two issues in under Allstate's original answer and, therefore, did not reach Allstate's request for a trial amendment. No written trial amendment was ever made.

Perez contends that Allstate did not plead the affirmative defense of "election of remedies" and that this issue was not tried by express or implied consent nor was there a written trial amendment regarding this issue. According to Perez, these issues should not have been submitted to the jury in the first place and any disregard of the answers to these issues is harmless.

■ "Election of remedies" may constitute a bar to relief when: (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980). In support of its position, Allstate cites *Smith v. Home Indem. Co.*, 683 S.W.2d 559 (Tex.App.—Fort Worth 1985, no writ), a summary judgment case in which Smith was denied worker's compensation benefits after applying for and receiving group insurance benefits. The court applied the *Bocanegra* requirements in *Smith* and found that Smith's uncontradicted admissions that he knew at the time he applied for group insurance benefits that these benefits were for nonwork-related injuries and that worker's compensation benefits were for work-related injuries, and that, nevertheless, he received group insurance benefits, were sufficient to establish that the remedies sought by Smith were inconsistent. *Smith*, 683 S.W.2d at 563. Allstate used the wording in these findings as the basis for its special issues.

■ The two questions in issue to which the jury answered affirmatively are as follows:

### QUESTION NUMBER 14

Do you find from a preponderance of the evidence that Plaintiff, Rebecca Perez, knew at the time she applied for the group insurance that those benefits were for nonwork related injuries?

### QUESTION NUMBER 15

Do you find from a preponderance of the evidence that Plaintiff, Rebecca Perez, received medical and disability benefits under her employer's group insurance coverage?

Neither of these issues address whether Perez exercised an informed choice between workers' compensation and her group insurance when she filed her claim for benefits for her neck, or whether she simply did as she was instructed. The issue of choice is an important part of the *Bocanegra* requirements for sustaining an election of remedies defense. The record indicates that, unlike *Smith* in which the facts were uncontradicted, the issue of choice was controverted. An affirmative finding on the issue of an informed choice between the policies would have been necessary to sustain relief under the defense of election of remedies.

In *Bocanegra, supra,* the Supreme Court refused to bar a claim on the theory of election of inconsistent remedies because at the time of the prior claim for insurance

(which resulted in settlement) the cause of injury was uncertain. Here, even though the jury found the appellant knew the *benefits* were for a work related injury, there was no finding that at the time of the election that the cause of injury was certain or known to Perez. The cause of the injury was uncertain at the time of her prior claim. No informed election can occur under such circumstances to bar appellant's recovery under her worker's compensation claim.

■ Appellant did not plead an election of remedies defense. Election of remedies is an affirmative defense which must be specifically pleaded and a general denial is not sufficient to raise such an affirmative defense. *France v. American Indem. Co.,* 648 S.W.2d 283, 285 (Tex.1983); *see also Bocanegra,* 605 S.W.2d 848, 851–52 (Tex.1980); Tex.R.Civ.P. 94. A party is not entitled to have an issue on an affirmative defense submitted to the jury unless he has affirmatively pleaded such defense. *Traveler's Ins. Co. v. Hobbs,* 222 S.W.2d 168, 171 (Tex.Civ.App.—San Antonio 1949, no writ); *see also Nichols v. William A. Taylor, Inc.,* 662 S.W.2d 396, 402 (Tex.App.—Corpus Christi 1983, no writ); Tex.R.Civ.P. 94.

■ The paragraph in Allstate's answer in which it claims it pleaded "election of remedies" is as follows:

> Further pleading, if the same be necessary, and in the alternative, this Counter–Defendant says that if the Counter–Plaintiff is suffering from any disability whatsoever, which is specifically denied, such is due solely to diseases, natural causes, bodily infirmities, and/or prior and subsequent incidents or injuries, wholly disassociated with the allegations upon which this action is predicated, or in the alternative, that a portion thereof, or a percentage of such disability resulted therefrom, or in the alternative, the same resulted solely from a prior or subsequent injury or condition, together with a prior or subsequent disease.

We find that this answer does not contain a specific pleading with regard to "election of remedies" and is, therefore, insufficient to raise that issue. Hence, the issue of election of remedies was not before the jury. The judge should not have submitted the issues regarding inconsistent remedies to the jury. It cannot be error for the trial judge to disregard jury findings on issues which should not have been submitted to the jury in the first place.

■ We further note that the issues submitted to the jury did not include the issue of an informed choice, a key part of the *Bocanegra* requirements for establishing an election of remedies. The two issues which were submitted were not sufficient on their own to support the defense of election of remedies. Additionally, since the cause of appellant's injury (whether it came from a work related or nonwork related activity) was uncertain at the time of the previous claim, the defense of election of remedies is not available in this case. It cannot be error for the trial judge to disregard jury findings on issues which cannot support a theory of law.

For the above discussed reasons, Allstate's first point of error is overruled.

## II. SUFFICIENCY OF THE EVIDENCE

■ Allstate's second point of error is that there was insufficient evidence to support the jury's findings that Perez sustained an injury to her neck on June 27, 1984, in the course of her employment and that such injury was a producing cause of any total incapacity. Allstate further contends that, alternatively, the findings were so contrary to the great weight and preponderance of the evidence as to be manifestly unjust and lead to the rendition of an improper verdict and the entry of an improper judgment.

In considering an "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests in *In Re King's Estate,* 244 S.W.2d 660 (1951) and *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). The court considers all the evidence, including any evidence

contrary to the jury findings. *Garza*, 626 S.W.2d at 125.

The evidence in support of the jury's findings that Perez suffered a neck injury on the same day that she dropped the VCR on her foot, June 27, 1984, is as follows. Within three days of dropping the VCR on her foot, Perez began to feel pain in her neck. Perez's pain initially resembled that which she experienced from a wrist injury in 1979 and the pain was treated as such during July and August, 1984, by the doctor who previously operated on her wrist, Dr. Wilson.

Dr. Wilson could not find the cause of Perez's neck pain and referred her to Dr. Yee, a neurologist, in September, 1984. After getting negative results on the nerve conduction studies of Perez's left wrist, Dr. Yee suggested that she have cervical spine x-rays done.

Although Perez continued to complain of neck pain, she was still treated by several wrist and hand specialists for her pain. One of these doctors, Dr. Sanders, suggested in January, 1985, that Perez's problems originated in her neck, but thought that the pain might be a result of a pinched nerve in the shoulder area.

By June, 1985, however, Dr. Luis, a neurosurgeon, diagnosed Perez as having a C5–C6 disc herniation, suggested cervical fusion, and because he no longer did that type of surgery, he recommended her to Dr. Grossman, another neurosurgeon.

In July, 1985, Perez was seen by Dr. Grossman. Dr. Grossman reviewed the results of the myelogram and CT scans done by Dr. Luis and noted that they did show a minimal deformity at C5–C6, but Dr. Grossman suggested that surgery was not necessary.

Perez continued to have neck pain and was unable to work consistently. She saw several doctors between July, 1985, and July, 1986. In July, 1986, Perez was diagnosed by Dr. Meadows, an orthopedic surgeon, as having a herniated disc. He acknowledged that his diagnosis was the same as that made by Dr. Luis in 1985. Subsequently, Dr. Meadows performed a spinal fusion on Perez. Dr. Meadow's opinion was that, based on reasonable medical probability, Perez injured her neck when she dropped the VCR. He explained to the jury how such an injury could occur.

The evidence which is contrary to the jury findings is as follows. Perez's initial injury report made no mention of a neck injury, nor did she report one to the company doctor the day of the accident. Although Perez stated that she experienced continual neck pain, she did not report it each time she visited a doctor. There was no suspicion of disc herniation until July, 1985, and the radiologist's analysis of the tests ordered by Dr. Luis at that time indicated that there was no disc herniation. Additionally, there was no diagnosis of disc herniation until July, 1986, almost two years after the accident. Finally, Perez filed with her group insurance carrier for benefits as a result of her neck surgery.

There is sufficient evidence to support the jury's findings regarding Perez's neck injury. Further, the evidence to the contrary is not such that the jury findings are unjust or that they led to an improper verdict and an improper judgment. Allstate's second point of error is overruled.

The judgment of the trial court is AFFIRMED.