COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-182-CV
 
 
CALSTAR PROPERTIES, L.L.C. AND                                       APPELLANTS
CALSTAR, L.L.C.
 
V.
  
CITY OF FORT WORTH AND LASALLE                                      APPELLEES
BANK NATIONAL ASSOCIATION (F/K/A
LASALLE NATIONAL BANK, N.A.) AS
TRUSTEE FOR THE CERTIFICATEHOLDERS
OF COMMERCIAL MORTGAGE ASSET
TRUST COMMERCIAL MORTGAGE PASS
THROUGH CERTIFICATES SERIES 1999-C1
 
 
------------
 
FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellants 
are Calstar, L.L.C. (“Calstar”) and Calstar Properties, L.L.C. (“Calstar 
Properties”).  Appellees are the City of Fort Worth (“Fort Worth”) 
and LaSalle Bank National Association (“LaSalle Bank”).  Appellants 
appeal the trial court’s granting of Fort Worth’s motion for summary 
judgment and LaSalle Bank’s motion to dismiss Calstar’s third-party 
petition.
I. Factual and 
Procedural Background
        In 
1998, Calstar and The Capital Company of America, L.L.C. (CCA) entered into a 
loan agreement wherein Calstar borrowed $5.6 million from CCA to purchase the 
Green Oaks Inn in Fort Worth, Texas.  To secure the loan, Calstar executed 
a Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement 
and Fixtures Filing (“Deed of Trust”) in favor of CCA. At that time, Calstar, 
CCA, and LaSalle Bank also entered into a Cash Management Agreement pursuant to 
which LaSalle Bank was to act as the “deposit bank” in managing the accounts 
provided for in the loan agreement.
        The 
terms of the loan agreement provided that CCA could assign all of its “rights, 
title, obligations and interests” in the loan documents.  The term 
“loan documents” is defined in the loan agreement to include the loan 
agreement itself, the Deed of Trust, and the Cash Management Agreement. Any 
assignee, according to the loan agreement, would “thereafter stand in the 
place of [CCA]” with respect to the loan documents.  CCA subsequently 
assigned the loan, Deed of Trust, and Cash Management Agreement to LaSalle Bank.  
The loan agreement and Cash Management Agreement contain forum selection clauses 
requiring actions between Calstar and CCA or its assignee to be brought in 
federal or state court in Los Angeles, California.
        Calstar 
owned the Green Oaks Inn from on or around September 4, 1998 until LaSalle Bank 
foreclosed on the note and purchased the hotel in November 2000.  Calstar 
Properties managed the hotel during Calstar’s period of ownership.  
According to section 32-21.2[1] of the City of Fort 
Worth Code (“Fort Worth Code”) and section 351.0041 of the Texas Tax Code, 
LaSalle Bank was required to withhold an amount of the purchase price sufficient 
to pay the hotel occupancy taxes due against the Green Oaks Inn.  Tex. Tax Code Ann. § 351.0041 (Vernon 
2002); Fort Worth, Tex., Code of 
Ordinances ch. 32, art. II, § 32-21.2 (2004) (effective Oct. 1, 1986).
        On 
March 29, 2001, Fort Worth sued Appellants and Appellee LaSalle Bank for 
delinquent occupancy taxes due on the Green Oaks Inn in the amount of 
$222,977.31.  This amount included $19,857.47 in penalties and $4,545.14 in 
interest. Appellants filed a cross-claim against LaSalle Bank for failure to 
withhold an amount sufficient to pay the hotel taxes.  In response, LaSalle 
Bank filed a motion to dismiss, claiming that Calstar’s petition violated 
contractual forum selection provisions in the loan agreement and Cash Management 
Agreement requiring all legal action between Calstar and LaSalle Bank to be 
brought in Los Angeles, California.  The trial court granted LaSalle 
Bank’s motion and dismissed Appellant’s action against LaSalle Bank with 
prejudice.
        Fort 
Worth eventually entered into a settlement agreement with LaSalle Bank and 
nonsuited LaSalle Bank.  Under the terms of the settlement agreement, 
LaSalle Bank paid Fort Worth $139,000 in settlement of the tax claim.  
Thereafter, Fort Worth filed a motion for summary judgment as to its claim 
against Appellants seeking $222,977.31 plus interest.  The trial court 
issued an order on the motion on January 14, 2003, stating in pertinent part:
 
The 
Court having review[ed] Plaintiff’s Motion for Summary Judgment and 
Defendant’s Response to Plaintiff’s Motion for Summary Judgment, and having 
heard argument regarding the same, is of the opinion that Plaintiff’s Motion 
for Summary Judgment is of merit and should be GRANTED.
 
IT IS 
THEREFORE, ORDERED ADJUDGED AND DECREED THAT Plaintiff’s Motion for Summary 
Judgment is GRANTED, and that Plaintiff is hereby awarded a judgment against 
Defendants Calstar, LLC and Calstar Properties, LLC in the amount of $83,977.31, 
that amount representing the entire amount of judgment sought for $222,977.31 
less an offset for $139,000 previously collected by Plaintiff from another 
Defendant herein.

This appeal ensued.
 
II. Summary Judgment
        A. 
Standard of Review
        In 
a traditional summary judgment case, the issue on appeal is whether the movant 
met his summary judgment burden by establishing that no genuine issue of 
material fact exists and that the movant is entitled to judgment as a matter of 
law.  Tex. R. Civ. P. 
166a(c); S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City 
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  
The burden of proof is on the movant, and all doubts about the existence of a 
genuine issue of material fact are resolved against the movant.  S.W. 
Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, Inc. v. Steel, 997 
S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. Co. v. San Antonio 
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must 
view the evidence and its reasonable inferences in the light most favorable to 
the nonmovant. Great Am., 391 S.W.2d at 47.
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true. Rhone-Poulenc, 997 S.W.2d at 223; Harwell 
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).  
Evidence that favors the movant's position will not be considered unless it is 
uncontroverted. Great Am., 391 S.W.2d at 47.  The summary judgment 
will be affirmed only if the record establishes that the movant has conclusively 
proved all essential elements of the movant's cause of action or defense as a 
matter of law. Clear Creek Basin, 589 S.W.2d at 678.
        B. 
Discussion
        In 
Appellants’ first issue, they contend that Fort Worth’s motion for summary 
judgment should have been denied for three reasons.  First, Appellants 
argue that under Fort Worth Code § 32-21.2 and Texas Tax Code § 351.0041, 
LaSalle Bank alone is the entity responsible for payment of the taxes sought by 
Fort Worth.  The Fort Worth Code and Texas Tax Code are virtually identical 
in language. Consequently, for the purposes of this appeal, we cite and refer to 
section 351.0041 of the Texas Tax Code, which states in pertinent part:
 
(a) If a 
person who is liable for the payment of a tax under this chapter is the owner of 
a hotel and sells the hotel, the successor to the seller or the seller’s 
assignee shall withhold an amount of the purchase price sufficient to pay the 
amount due until the seller provides a receipt by a person designated by the 
municipality to provide the receipt showing that the amount has been paid or a 
certificate showing that no tax is due.
 
 
Tex. Tax Code Ann. § 351.0041; see 
also Fort Worth, Tex., Code of 
Ordinances ch. 32, art. II, § 32-21.2.
        Appellants 
argue that under the plain meaning of the tax code, no party other than the 
“purchaser of the hotel” owes the delinquent hotel occupancy tax.  In 
response to Appellants’ argument, Fort Worth points us to section 351.004 of 
the Texas Tax Code, which states in part:
 
(a) The 
municipal attorney or other attorney acting for the municipality may bring suit 
against a person who is required to collect the tax imposed by this chapter and 
pay the collections over to the municipality and who has failed to file a tax 
report or pay the tax when due to collect the tax not paid or to enjoin the 
person from operating a hotel in the municipality until the tax is paid or the 
report filed, as applicable, as provided by the court’s order.
 
                . 
. . .
 
(d) The 
remedies provided by this section are in addition to other available remedies.
 
 
Tex. Tax Code Ann. § 351.004 (a), (d) 
(Vernon 2002).  Fort Worth argues that the very language of section 
351.004(d) indicates that the pursuit of the owner who collected the taxes in 
question is a remedy in addition to other available remedies and that the 
reasoning behind this language is apparent.   According to Fort Worth, 
the owner of a hotel is acting as trustee for the municipality or the State when 
he or she collects a properly assessed hotel occupancy tax because the money 
collected does not belong to the owner.  Rather, the hotel owner is holding 
the money for the benefit of the assessor.  Fort Worth asserts that if an 
owner could simply sell the hotel to avoid liability for taxes improperly 
converted to personal use, the owner would realize an inequitable windfall every 
time he or she found a purchaser ignorant of proper sales procedures.
        When 
construing a statute, we ascertain the Texas Legislature’s intent from the 
plain meaning of the actual language used.  Lenz v. Lenz, 79 S.W.3d 
10, 19 (Tex. 2002).  Additionally, the primary rule in statutory 
interpretation is that a court must give effect to legislative intent, 
considering the language of the statute, as well as its legislative history, the 
objective sought, and the consequences that would flow from alternative 
constructions   Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 
383 (Tex. 2000).  To date, no court has addressed the interaction between 
sections 351.004 and 351.0041 of the tax code.  Therefore, we look to 
similar statutes.  See Univ. of Tex. Med. Branch at Galveston v. Barrett, 
112 S.W.3d 815, 822 (Tex. App.—Hous. [14th Dist.] 2003, no pet.) (Anderson, 
J., dissenting) (en banc op. on reh’g) (stating that in construing a statute, 
courts may consider other statutes on the same or similar subject); see also 
In re Doe, 19 S.W.3d 249, 255 (Tex. 2000).
        Although 
not cited by either party, research reveals several sections within the tax code 
that contain almost identical language to 351.0041.  See e.g. Tex. Tax Code Ann. §§ 31.081 (relating 
to property tax withholding on purchase of business or inventory), 111.020 
(relating to state tax collection on termination of business) (Vernon 2001), 
§§ 156.204 (relating to state hotel occupancy tax collection upon termination 
of business), 352.0041 (relating to county hotel occupancy tax collection on 
purchase of hotel) (Vernon 2002); see also Tex. Loc. Gov’t Code Ann. § 334.114 
(Vernon 1999) (relating to collection procedures on purchase of motor vehicle 
rental business).  These sections, like 351.0041, have not been addressed 
by any court in relation to their interaction with other sections of the tax 
code.
        Under 
the Texas Code Construction Act, even when a statute is not ambiguous on its 
face, we may consider administrative construction of a statute.  See 
Tex. Gov’t Code Ann. § 
311.023(6) (Vernon 1998).  Although research did not uncover administrative 
materials regarding 351.004 or 351.0041, the Texas Comptroller of Public 
Accounts has construed the statute addressing state hotel occupancy 
taxation . See Tex. Tax Code Ann. § 
156.204. As stated previously, this statute has almost identical language to 
section 351.0041: 
 
(a) If a 
person who is liable for the payment of an amount under Section 156.151 of this 
code is the owner of the hotel and sells the hotel, the successor to the seller 
or the seller’s assignee shall withhold an amount of the purchase price 
sufficient to pay the amount due until the seller provides a receipt from the 
state comptroller showing that the amount has been paid or a certificate stating 
that no amount is due.
 
(b) The 
purchaser of a hotel who fails to withhold an amount of the purchase price as 
required by this section is liable for the amount required to be withheld to the 
extent of the value of the purchase price.
 
 
Id. § 156.204(a)-(b).
        In 
a 1989 Texas Comptroller’s Decision, an administrative law judge was called 
upon to consider the petitioners’ contention that successor liability for 
unpaid hotel occupancy taxes should have been assessed against the purchaser of 
a motel, namely the foreclosing creditor, rather than against petitioners as 
predecessor owners. Taxpayer Hearing on Disputed Audit, 1989 WL 148705, 
at *2, Hearing No. 24, 983 (Tex. Cptr. Pub. Acct. Nov. 12, 1989). In that case, 
the administrative law judge denied the petitioners contention, concluding: 
 
While 
the deficiency has been denominated as a successor liability, it is in fact a 
primary liability owed by the Petitioners. Officers and directors do not become 
liable as successors when a corporation’s right to do business is forfeited 
but as principals of an operating concern similar to partners in a partnership. 
Consequently, Petitioner’s reliance on the provisions of the act concerning 
successor liability and the related hearings is misplaced.
 
Petitioners 
argued they should be relieved of liability because the business was sold. I 
would point out that the successor liability provision is intended to give the 
Comptroller the option of proceeding against the purchaser, it is not intended 
to relieve the predecessor of liability.
 
 
Id.  We 
agree that the language of the Texas Tax Code is clear in its intent to allow 
the pursuit of occupancy taxes from the person(s) required to collect the hotel 
occupancy tax in the first place, as well as from a hotel purchaser that fails 
to withhold the amount of occupancy taxes due from the purchase price.
        The 
plain meaning of section 351.004 is that suit may be brought against a person 
who is required to collect the tax imposed by this chapter and fails to pay the 
tax when it is due.  Tex. Tax Code 
Ann. § 351.004.  Appellants, by their own admission, owned the 
hotel from on or around September 4, 1998 until LaSalle Bank purchased it on 
November 7, 2000.  According to a sworn affidavit from the Deputy Treasurer 
for Fort Worth, the occupancy taxes due for the period from January 1999 through 
March 2000 were $222,977.31.  Thus, under section 351.004, Fort Worth 
properly brought suit against Appellants for the unpaid taxes.  Section 
351.004(d) clearly provides that this remedy is available in addition to other 
remedies, such as Fort Worth’s collection of taxes from LaSalle Bank under 
section 351.0041.
        The 
plain meaning of section 351.0041 is that the purchaser of the hotel is liable 
for the occupancy taxes when it fails to withhold funds from the purchase price.  
Nothing in the tax code indicates that sections 351.004 and 351.0041 are 
mutually exclusive.  We should read every word, phrase, and expression in a 
statute as if it were deliberately chosen, and presume the words excluded from 
the statute are done so purposefully.  See Gables Realty Ltd. 
P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. 
App.—Austin 2002, pet. denied); City of Austin v. Quick, 930 S.W.2d 
678, 687 (Tex. App.—Austin 1996), aff'd, 7 S.W.3d 109 (Tex. 1998) 
(citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 
1981)).  Reading sections 351.004 and 351.0041 together, we presume that 
the legislature intentionally omitted language that would indicate that sections 
351.004 and 351.0041 are mutually exclusive, and we construe the tax code to 
allow recovery under both sections.
        We 
additionally find no support for the proposition that a person required to 
collect hotel occupancy taxes is absolved from the obligation to turn the funds 
over to the municipality if it sells the hotel.  In addition to subsections 
(a) and (b), section 351.0041 provides a means for hotel purchasers to avoid 
liability all together under certain circumstances: 

(c) The 
purchaser of a hotel may request that the person designated by the municipality 
to provide a receipt under Subsection (a) issue a certificate stating that no 
tax is due or issue a statement of the amount required to be paid before a 
certificate may be issued. The person designated by the municipality shall issue 
the certificate or statement not later than the 60th day after the date that the 
person receives the request.
 
(d) If 
the person designated by the municipality to provide a receipt under Subsection 
(a) fails to issue the certificate or statement within the period provided by 
Subsection (c), the purchaser is released from the obligation to withhold the 
purchase price or pay the amount due.
 
Tex. Tax Code Ann. § 351.0041(c)-(d) 
(emphasis added).  These subsections conflict with Appellants’ blanket 
assertion that the purchaser of a hotel is liable for all taxes involving 
occupancy up to and including the time of purchase.  Appellants contend 
their “obligation to pay any hotel occupancy taxes . . . extinguished when 
LaSalle Bank foreclosed upon its note and ‘purchased’ the hotel.”  
However, section 351.0041 only requires the purchaser of a hotel to withhold an 
amount of the purchase price sufficient to pay occupancy taxes “until the 
seller provides a receipt . . . showing that the amount has been paid or a 
certificate showing that no tax is due.” Id. § 351.0041(a).  
According to the plain language of the statute, Appellants could pay the 
occupancy taxes after selling the hotel, which would relieve LaSalle Bank of the 
duty to withhold the occupancy tax amount from the purchase amount and remove 
any liability for the occupancy taxes due.
        Moreover, 
section 351.0041(b) limits the liability of a hotel purchaser who fails to 
withhold taxes to the amount of the purchase price.  Id. § 
351.0041(b).  Appellants’ proposed construction of the statute would 
leave municipalities without recourse beyond the purchaser’s sale price.  
We decline to interpret the statute to lead to such an illogical result.  
Thus, we construe the statute as allowing recovery both from the person required 
to collect the occupancy tax and the purchaser of a hotel who fails to withhold 
the occupancy tax amount from the purchase price of the hotel.
        Appellants’ 
second argument relating to their contention that summary judgment was 
improperly granted is that Fort Worth is barred from seeking recovery under the 
doctrine of the election of remedies.  An election of remedies is “the 
act of choosing between two or more inconsistent but coexistent modes of 
procedure and relief allowed by law on the same set of facts.”  Custom 
Leasing, Inc. v. Tex. Bank & Trust Co., 491 S.W.2d 869, 871 (Tex. 1973).  
The doctrine of election of remedies bars recovery when one successfully 
exercises an informed choice between two or more remedies, rights, or states of 
facts, which are so inconsistent that to allow recovery would constitute 
manifest injustice.  Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 
848, 851 (Tex. 1980).  Remedies are inconsistent when one of the remedies 
results from affirming the transaction and the other results from disaffirming 
the transaction.  Foley v. Parlier, 68 S.W.3d 870, 882 (Tex. 
App.—Fort Worth 2002, no pet.).  For example, in a fraud case, the 
plaintiff can either claim rescission for fraud and get his property back or he 
can sue for damages and affirm the transaction.  Id.  A party 
is entitled to sue and seek damages on alternative theories but is not entitled 
to recover on both theories; to do so is considered equivalent to a “double 
recovery.”  Id.; see Waite Hill Servs., Inc. v. World Class 
Metal Works, Inc., 959 S.W.2d 182, 184 (Tex. 1998).
        As 
previously discussed, the applicable statutes here, by their plain language and 
intent, create coexisting mechanisms for recovery.  The court did not 
require Appellants and LaSalle Bank to each pay the full amount of the hotel 
occupancy tax delinquency.  Rather, the trial court ordered Appellants to 
pay the delinquency minus an offset in the amount of LaSalle Bank’s settlement 
payment.  Thus, we conclude that the doctrine of election of remedies does 
not bar Fort Worth from collecting the remainder of the delinquent occupancy tax 
from Appellants.
        Finally, 
Appellants argue that summary judgment should not have been granted because 
there were three genuine issues of material fact: 

1.What is 
the remaining amount of unpaid taxes, if any, after the application of the 
$139,000.00 paid by LaSalle Bank to the City of Fort Worth?
 
2.Was the 
settlement by the City of Fort Worth with LaSalle Bank an election of remedies?
 
3.Is the 
recovery by the City of Fort Worth against [Appellants] in the sum of $83,977.31 
a double recovery or unjust enrichment?
 
        Appellants’ 
first purported issue of material fact is simply a mathematical calculation. 
Fort Worth provided ample evidence, in the form of a sworn affidavit from the 
Deputy Treasurer for Fort Worth, that the total delinquency was $222,977.31 
(including penalty and interest).  Subtracting Fort Worth’s settlement 
with LaSalle Bank in the amount of $139,000 leaves a remaining delinquency owed 
of $83,977.31.  Consequently, there is no genuine issue of material fact as 
to the remaining amount of unpaid taxes.
        Appellants’ 
other purported issues of material fact involve questions that have been decided 
as a matter of law.  Farah v. Mafrige & Karmanik, P.C., 927 
S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ) (stating 
“[w]hen the issue is one of no evidence or conclusive evidence, the issue is a 
question of law”).  Whether Fort Worth’s settlement with LaSalle Bank 
is an election of remedies or constitutes a double recovery is a question of law 
that we have decided in Fort Worth’s favor, as previously discussed.  
Further, unjust enrichment is merely an element of Appellants’ affirmative 
defense regarding the doctrine of election of remedies.  See Bocanegra, 
605 S.W.2d at 851; Stephens v. Dallas Area Rapid Transit, 50 S.W.3d 621, 
628 (Tex. App.—Dallas 2001, pet. denied) (stating the doctrine combines 
elements of estoppel, ratification, and unjust enrichment).  Thus, 
Appellants have presented no genuine issues of material fact.  Having 
resolved all three of Appellants’ arguments presented in their first issue in 
favor of Fort Worth, we overrule Appellants’ first issue.
III. Dismissal 
of Third-party Petition
        In 
Appellants’ second issue, they contend that the trial court improperly granted 
LaSalle Bank’s motion to dismiss the third-party petition of Appellants, in 
which they argued that they are entitled to recover from LaSalle Bank any and 
all monies obtained in the judgment by Fort Worth against Appellants in the form 
of indemnity, breach of contract, negligent misrepresentations, breach of 
fiduciary duty, and unfair business practices.  According to LaSalle Bank, 
Appellants’ petition is actually a cross-claim, which the trial court properly 
dismissed because it directly violated valid, enforceable contractual forum 
selection provisions contained in the loan agreement and Cash Management 
Agreement that require all legal actions between Appellants and LaSalle Bank to 
be brought in Los Angeles, California.
        Section 
10.7(b) of the loan agreement provides as follows: 

ANY 
LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR 
RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN 
LOS ANGELES, CALIFORNIA.
 
Likewise, section 12 of the cash management 
agreement provides: 

 
ANY 
LEGAL SUIT, ACTION OR PROCEEDING AGAINST DEPOSIT BANK, LENDER OR BORROWER 
ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY FEDERAL 
OR STATE COURT IN LOS ANGELES, CALIFORNIA.
 
        Appellants’ 
sole argument in support of their contention that the court erred in enforcing 
these provisions is an unsupported assertion that section 15.020(c)(2) of the 
Texas Civil Practices and Remedies Code should not apply to this case.  
Section 15.020(c)(2) states that an action arising from a “major 
transaction” cannot proceed in a Texas county if “the party bringing the 
action has agreed in writing that an action arising from the transaction must be 
brought in another county of this state or in another jurisdiction.”  Tex. Civ. Prac. & Rem. Code Ann. § 
15.020(c)(2) (Vernon 2002).  Appellants, citing no authority, reason that 
they are not subject to 15.020(c)(2) because they did not initiate the 
underlying litigation against LaSalle Bank.
        Despite 
Appellants’ characterization of their claim as a third-party action and 
compulsory counter-claim, we first note that Appellants’ claim against LaSalle 
Bank is a cross-claim.  Fort Worth initially sued Appellants and LaSalle 
Bank, causing them to be co-defendants.  A third-party petition is employed 
when a defendant causes “a citation and petition to be served upon a person not 
a party to the action who is or may be liable to him or to the plaintiff for 
all or part of the plaintiff’s claim against him.”  Tex. R. Civ. P. 38(a) (emphasis added).  
A counterclaim is a claim against an opposing party.  Tex. R. Civ. P. 97(a)-(b) (emphasis 
added).  A cross-claim, like Appellants’ claim against LaSalle Bank, is a 
“claim by one party against a co-party arising out of the transaction or 
occurrence that is the subject matter either of the original action or of a 
counterclaim therein.”  Tex. R. 
Civ. P. 97(e).
        Thus, 
the question before us is whether a cross-claim is subject to a valid, 
enforceable forum selection clause.  Appellants cite no authority 
indicating that they are not the “party bringing the action” or that we 
should not apply the plain meaning of section 15.020.  In Texas, forum 
selection clauses are enforceable, provided that (1) the parties have 
contractually consented to submit to a particular jurisdiction, and (2) the 
other state recognizes the validity of such provisions.  See Accelerated 
Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 70-71 (Tex. 
App.—Dallas 1996, no writ); Greenwood v. Tillamook Country Smoker, Inc., 
857 S.W.2d 654, 656 (Tex. App.—Houston [1st Dist.] 1993, no writ).  It is 
well settled that contractual forum selection clauses are enforced in 
California.  See Smith, Valentino & Smith, Inc. v. Superior Court, 
17 Cal.3d 491, 496 (1976) (stating forum selection clauses are valid); Intershop 
Communications, AG v. Superior Court, 104 Cal. App. 4th 191, 196 (Cal. Ct. 
App. 2002) (stating a mandatory forum selection clause will ordinarily be given 
effect without any analysis of convenience).  Appellants did not argue or 
present any authority that section 15.020(c)(2) abrogates this common law 
enforcement of forum selection clauses.  We conclude this issue is 
inadequately briefed.  See Kang v. Hyundai Corp. (U.S.A.), 992 
S.W.2d 499, 503 (Tex. App.—Dallas 1999, no pet.); Tex. R. App. P. 38.1(h) (providing that 
brief must contain clear and concise argument for contentions made with 
appropriate citations to authorities).  Failure to cite any authority 
constitutes a waiver of the alleged error. Kang, 992 S.W.2d at 503.  
We overrule Appellants’ second issue.
IV. Conclusion
        Having 
overruled both of Appellants’ issues, we affirm the trial court’s judgment.
  
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
 
PANEL B:   DAUPHINOT, 
GARDNER, and MCCOY, JJ.
 
DELIVERED: June 10, 2004

 
NOTES
1.  Both parties cite to section 
32-23 of the Fort Worth Code.  Section 32-23, however, relates to the 
designation of residential reinvestment zones for tax abatement.  Fort 
Worth’s motion for summary judgment attached a copy of 32-21.2, which 
addresses tax collection procedures on the purchase of hotels.  We further 
note that while the record contains copies of section 32-21.2, a copy of section 
32-23 is not included in the summary judgment evidence.  Therefore, we 
construe the parties’ argument to relate to section 32-21.2.