# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-14-00068-CV

**Larry Mark Polsky, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GV-13-000067, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Larry Mark Polsky appeals from a trial court judgment assessing civil penalties for violations of the Texas Natural Resources Code and the Texas Local Government Code in connection with his development activities on beachfront property he owns on South Padre Island. *See* Tex. Nat. Res. Code §§ 63.001-.1813 (Dune Protection Act); Tex. Local Gov't Code §§ 232.021-.043 (subdivision platting requirements in county near international border). The trial court also granted injunctive relief requested by the State and awarded it $200,000 in attorneys' fees. In twenty-two issues, Polsky challenges the sufficiency of the evidence supporting certain jury findings and raises numerous legal challenges to the trial court's judgment. We will affirm.

## BACKGROUND

In June 2009, Polsky purchased three contiguous beachfront lots in the Ocean Side Subdivision approximately six miles north of the City of South Padre Island in Cameron County.

Polsky then re-subdivided the three lots into a five-lot subdivision he intended to develop under the name "Sea Breeze Estates." Because his development of the property would require disturbing protected sand dunes along the Gulf of Mexico, it was subject to regulation under the Dune Protection Act. *See* Tex. Nat. Res. Code § 63.091 (prohibiting damage, destruction, or removal of sand dune seaward of dune protection line or within critical dune area without permit). According to the State, Polsky's development activity was also subject to Texas Local Government Code subchapter 232 because it involved creating a residential subdivision outside city limits in a county along the Texas-Mexico border. *See* Tex. Loc. Gov't Code § 232.022 (subchapter applies to land in county located within 50 miles of international border subdivided into two or more lots intended primarily for residential use).

An owner of land who desires to damage, destroy, or remove a sand dune or portion of a sand dune seaward of a dune protection line or within a critical dune area must apply for a permit. *See* Tex. Nat. Res. Code § 63.051. Dune permits are issued by the applicable county commissioners court or municipal governing body, in this case the Cameron County Commissioners Court. *See id.* The General Land Office (GLO) may comment on the proposed activity, which comments must be reviewed and considered by the local government when determining whether to approve it. *See* 31 Tex. Admin. Code § 15.3(s)(6)(B), (s)(7)(D) (2016) (Tex. Gen. Land Office, Administration). Polsky applied to the Cameron County Commissioners Court (the County) for a dune permit for the Sea Breeze Estates development. After considering the application and comments from the GLO, the County issued Polsky a dune permit on December 21, 2010 (the Permit). The Permit authorized certain construction, including raising the building site's elevation to 12 feet above mean sea level

2

and installing an "aluminum perimeter security fence." The Permit also stated that all construction "will be constructed in accordance with the General Land Office comment letter of December 15, 2010," which was attached as an exhibit to the Permit. One of the comments made by the GLO in the letter was that "[t]he applicant may not construct the fence if the footings or foundation of the fence constitute a retaining wall or its functional equivalent."

After Polsky commenced construction at the site, the GLO informed him by letter dated November 15, 2012 that his activities appeared to be in violation of the Permit because they included unpermitted excavation or trenching of dunes and because it appeared that the site was being prepared for construction of a retaining wall or structure that would act as the functional equivalent of a retaining wall within 200 feet of the vegetation line. The GLO did not then issue a notice of violation, but requested that Polsky cease the unpermitted construction activities and initiate voluntary compliance with the Permit. When Polsky did not cease construction activities, the GLO, through the Office of the Attorney General, filed suit to enjoin the continued violation of the Permit and to recover civil penalties as permitted by statute. *See* Tex. Nat. Res. Code § 63.181 (authorizing attorney general, at request of GLO, to file suit to obtain injunctive relief, collect damages to injured natural resources, and recover civil penalties).

In addition to alleging that Polsky's construction activities were in violation of the Permit, the State also alleged that Polsky had failed to comply with subchapter 232 of the Texas Local Government Code. Specifically, the State alleged that Polsky offered to sell land in a subdivision without an approved plat. *See* Tex. Loc. Gov't Code §§ 232.031(a) (subdivider may not sell land in subdivision first platted or replatted after July 1, 1995 unless plat is approved by

3

commissioners court), .021(9) ("sell" includes offer to sell). In February 2013, the trial court signed a temporary injunction prohibiting Polsky from conducting any construction activities on the property, requiring that he remove a "Sea Breeze Estates" sign located on the property and take down a website advertising "Sea Breeze Estates," and prohibiting the sale of any of the re-subdivided "Sea Breeze Estates" lots until final plat approval. In April 2013, the State sent Polsky a letter clarifying that while the injunction prohibited him from selling the re-subdivided Sea Breeze Estates lots for which he did not have an approved plat, it did not prohibit him from selling the land as originally platted, i.e., the three Ocean Side Subdivision lots. The letter advised Polsky that if he intended to advertise or sell the three Ocean Side Subdivision lots using the name "Sea Breeze Estates," he should amend the plat of the three-lot subdivision to reflect a name change in order to avoid potential deceptive trade practices issues.

In September 2013, the State amended its petition to add an allegation that Polsky had also violated chapter 232 because the "Sea Breeze Estates" sign, which the injunction had required him to remove, had advertised subdivided land without accurately describing the availability of water and sewer service facilities and electric and gas utilities. *See id.* § 232.033(a)(2) (advertising of any form relating to subdivided land may not contain any misrepresentation and, except for for-sale sign no larger than three feet by three feet, must accurately describe availability of water and sewer service facilities and electric and gas utilities). Polsky then filed a notice of his intent to call as a witness at trial the State's lead attorney, Shelley Doggett, to testify about why she had not, in the April 2013 letter, advised him that the "Sea Breeze Estates" sign he had removed had allegedly lacked the required information about water and sewer service facilities

4

and gas and electric utilities and why she had "waited" until September 2013 to add an allegation that Polsky's sign violated Local Government Code section 232.033(a)(2). Polsky also moved to disqualify Doggett from representing the State at trial on the ground that she would be called as a witness. The State moved to strike Polsky's motion to disqualify Doggett and requested monetary sanctions against him for filing a frivolous motion. Polsky filed no response to the motion for sanctions and attended a hearing on the State's motion by telephone. After the hearing, the trial court determined that Polsky had no legitimate basis for seeking to disqualify Doggett, struck the motion to disqualify, quashed a trial subpoena, and assessed a $2,500 sanction against Polsky.

The case then proceeded to a five-day jury trial at the conclusion of which the jury found that Polsky (1) violated the Permit by damaging, destroying, or removing a sand dune or a portion of a sand dune contrary to the Permit and by constructing or starting to construct in whole or in part a structure contrary to the Permit, (2) advertised residential subdivision lots without accurately describing the availability of water and sewer service facilities and gas and electric utilities, and (3) offered to sell residential lots in his planned five or six-lot Sea Breeze Estates Subdivision[1] on an Internet website without first obtaining approval of a final plat for that subdivision from the County. The jury also answered questions regarding the duration of each violation. The jury found that $200,000 was a reasonable fee for the services of the Texas Attorney General's Office for the preparation and trial of the case. Thereafter, the court rendered judgment on the jury's verdict and assessed civil penalties, which it calculated by multiplying the number of

---

[1] Sea Breeze Estates initially consisted of six lots but was later reconfigured to include only five lots.

5

days the jury found for each violation by the relevant minimum statutory penalty as provided in the Natural Resources Code and the Local Government Code. The total amount of the civil penalties assessed was $419,300. The trial court also ordered Polsky to pay the State $200,000 for its reasonable and necessary attorneys' fees. The court permanently enjoined Polsky from engaging in construction activities contrary to his Dune Protection Permit and ordered him to restore the damaged dunes to their pre-construction location, contour, volume, elevation, vegetative cover and sediment content. The court also permanently enjoined Polsky from advertising the three Ocean Side Subdivision lots without providing accurate facilities information and from offering to sell any proposed or actual re-subdivision of the three Ocean Side Subdivision lots without first obtaining approval of a final plat for the re-subdivided property from the County. Polsky filed a motion for judgment not withstanding the verdict and motion for new trial, both of which the trial court denied, and this appeal followed.

## DISCUSSION

### *Violation of the Permit*

Polsky argues on appeal that there are a variety of legal bars to imposing liability on him for violating his dune permit. He also challenges the legal sufficiency of the evidence supporting the jury's finding that he violated the Permit.[2] We will first address Polsky's assertions that, as a matter of law, he could not be liable for violating the Permit.

_____

[2] Although one of the issues included in Polsky's "Statement of Issues Presented" purports to raise a global factual sufficiency challenge to all the jury's findings, he has failed to provide any related briefing or legal analysis. Consequently, the factual sufficiency challenge to the jury's findings is inadequately briefed and presents nothing for review or is subsumed in other of Polsky's appellate issues. *See* Tex. R. App. P. 38.1(i).

6

First, Polsky argues that the jury verdict is "void" and the trial court had no "jurisdiction" over the State's claim that he violated the Permit because the GLO did not inform Polsky of his right to an administrative hearing before assessing administrative penalties against him. Polsky appears to rely on Natural Resources Code section 63.1814, which provides:

> (b) Before the commissioner may order restoration under Section 63.1813 or assess an administrative penalty under Section 63.1811, the commissioner must give written notice to a person who is taking or has taken actions that violate Section 63.091 or any rule, permit, or order issued under this chapter.

Tex. Nat. Res. Code § 63.1814. As Polsky correctly states in his brief, this notice requirement applies when the Commissioner of the GLO seeks to assess administrative penalties as permitted by Natural Resources Code section 63.1811. *Id.* § 63.1811 (commissioner may assess administrative penalty). The present case does not, however, involve an agency's restoration order or assessment of administrative penalties. Rather, here the State was exercising the enforcement authority conferred by section 63.181 to seek injunctive relief and civil penalties in Travis County district court. *See id.* § 63.181 (authorizing attorney general, at request of GLO, to file suit to obtain injunctive relief, collect damages to injured natural resources, and recover civil penalties). The notice requirements related to the agency's assessment of administrative penalties contained in section 63.1814 have no application to this civil enforcement action.

Second, Polsky argues that rather than suing him in district court, the GLO's only recourse under the circumstances presented was to challenge the Permit in a suit against the County pursuant to Natural Resources Code section 63.152. *See id.* § 63.152 (commissioner of GLO may appeal to district court any decision of local governing body deemed by GLO to be violation of

7

chapter 63). This argument assumes that the GLO's position was that it objected to the Permit itself rather than to Polsky's construction activities. Neither the GLO nor the State took the position that the Permit was not properly obtained or that it violated state law, GLO rules, or should have been revoked. Rather, the GLO believed, and the State argued at trial, that Polsky had violated the Permit by engaging in construction activities beyond the scope of those it authorized. Polsky maintains, however, that because the County believed Polsky's conduct was in compliance with the Permit, the GLO and the State's position was, in essence, that the Permit itself was contrary to state law and should not have been issued—a challenge to the propriety of the County's action in issuing the Permit. This argument fails, however, because the record does not support its underlying premise, i.e., that the County believed that Polsky's construction activities were authorized by the Permit. The County's failure to issue notices of violation does not prove that it considered Polsky's construction to be in compliance with the Permit. There are many factors that may inform whether a governmental body chooses to exercise its enforcement authority, including whether, as here, other governmental bodies have a similar enforcement authority. In the present case, the jury could have concluded, for example, that the County's decision not to act was driven by Polsky's threats to sue the County.[3]

The testimony of Parks Director Javier Mendez also did not establish as a matter of law that the County approved his construction activities. Although Mendez testified that he received permit applications and coordinated meetings of the local dune protection committee, he was not

---

[3] Cameron County Parks Director Javier Mendez testified that Polsky had threatened to sue the County if he was not allowed to build on his property as he desired to.

a member of the Cameron County Commissioners Court, did not vote on whether to approve the Permit, and did not attend the hearing at which Polsky's application was considered. There was no evidence that Mendez was the County's authorized representative at trial. Although Mendez testified that, in his opinion, Polsky's construction did not violate the Permit, as with any other witness, the jury was free to weigh the credibility of that testimony or disregard it altogether. The record simply does not reflect that the County itself took a definitive position on whether or not Polsky violated the Permit.

Having found no legal bar to the State's claim that Polsky violated the Permit, we next consider his challenge to the legal sufficiency of the evidence supporting the jury's finding that his construction activities were contrary to the Permit. In reviewing a legal sufficiency challenge to a finding, we view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the opposing party bears the burden of proof, the challenge must be sustained when (1) there is a complete absence of evidence of a vital fact; (2) the factfinder is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). More than a scintilla of evidence exists to support a finding if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. Conversely, evidence conclusively establishes the opposite of a vital fact when the evidence is such that reasonable people could not disagree in their conclusions. *See City of Keller*, 168 S.W.3d at 814-17.

The jury found that Polsky violated his dune permit by (1) "[d]amaging, destroying, or removing a sand dune or a portion of a sand dune contrary to the permit," and (2) "[c]onstructing or starting to construct in whole or in part a structure contrary to the permit." Having reviewed the record, we agree with the State that there is legally sufficient evidence supporting this finding. Angela Sunley, a GLO beach and "dune team leader" who reviewed Polsky's application for the Permit, testified that Polsky's application sought to raise his site to an elevation of 12 feet above mean sea level and construct an aluminum perimeter security fence on the top. Because some dunes on the property were as high as 20 feet above mean sea level, Polsky requested permission to cut the tallest dunes down to the 12-foot elevation and build any smaller dunes up to that level. Thus, Sunley testified that the Permit allowed Polsky to raise the building site to 12 feet above the mean sea level and to cap and manipulate the dunes at that height. The Permit's language is consistent with this testimony. Sunley testified that the Permit did not authorize any trenching or excavation of the dunes below the 12 feet above mean sea level elevation nor did it permit the installation in such a trench of a structure never authorized by the permitting authority.

Sunley testified that Polsky's subsequent dune disturbance was much more extensive than what he had requested to do in his permit application. Specifically, he trenched through dunes on all four sides of the site to the base elevation—five to six feet below the 12 feet above mean sea level elevation stated in the Permit. The court admitted photographic evidence of the trenching activities. Polsky's application never requested permission to trench around the perimeter of his property, and Sunley's testimony constitutes more than a scintilla of evidence that Polsky caused significantly more dune disturbance than his Permit authorized. Thus, the evidence was legally

10

sufficient to support the jury's finding that Polsky damaged, destroyed, or removed a sand dune or portion of a sand dune contrary to the Permit.

Sunley also testified regarding Polsky's construction of the foundation of what was planned to be a fence around the perimeter of the property. Sunley testified that although Polsky claimed this construction was the beginning of his permitted fence, it was in fact an underground structure not described in Polsky's application nor authorized by the Permit. Sunley and Polsky's builder, Herb Houston, Jr., testified extensively about the structure, including that it had a wide concrete footing laid well below the 12 feet above mean sea level elevation from which protruded vertical rebar onto which Polsky intended to impale hay bales. There was testimony that Polsky planned to fill the site with sand up to a uniform level, essentially using the fence as a retaining wall. Polsky's engineer, surveyor, and permit agent, James Holdar, testified that the fence sketch submitted with Polsky's application for a permit did not indicate that there would be any fence-related construction below the 12 feet above mean sea level elevation. Polsky's placing the footer for the fence at base elevation level was not authorized by the Permit, and there was testimony that this structure would act as a retaining wall in direct contravention of language in the Permit prohibiting such a structure within 200 feet of the vegetation line. This testimony constitutes more than a mere scintilla of evidence to support the jury's finding that Polsky constructed or started to construct in whole or in part a structure contrary to the Permit.

On appeal, Polsky maintains that Mendez's testimony that his construction activities were in compliance with the Permit constitutes evidence that conclusively proves the opposite of the jury's findings regarding his permit violations. We disagree. As previously stated, Mendez was

11

not a member of the Cameron County Commissioners Court that considered and issued the Permit. Nor was he its authorized representative at trial. Moreover, Mendez's testimony is not unequivocal regarding the propriety of Polsky's construction activities. With respect to the trenching, while he testified that dune permits do not always specify trenching details, he agreed that applicants must nevertheless account for trenching so that the GLO and the County can calculate the volume of mitigation required to offset any requested dune disturbance. Neither Polsky's application nor the Permit addressed the trenching issue. Mendez also acknowledged on cross-examination that when he first saw the concrete foundation Polsky was constructing he took a picture of it and sent it to another County employee in an email stating: "This is a picture of the 'fence foundation' that Herb [Houston] is putting up at Sea Breeze. It's questionable." Mendez testified that he discussed these concerns with the county attorney. Mendez also testified that Polsky had threatened to sue the County if he was not allowed to build what he wanted. The evidence was legally sufficient to support the jury's findings that Polsky violated the Permit, and the trial court did not err in rendering judgment on those findings.

### *Violation of Residential Subdivision Requirements*

The jury found that Polsky violated certain border area residential subdivision regulations found in chapter 232 of the Texas Local Government Code. Specifically, the jury found that Polsky advertised residential subdivision lots on a billboard that did not include any information about water and sewer service facilities or electric and gas utilities, a violation of section 232.033(a)(2). *See* Tex. Loc. Gov't Code § 232.033(a)(2). The jury also found that Polsky offered lots for sale before obtaining a final subdivision plat approved by the County, a violation of section 232.031(a).

12

*See id.* § 232.031(a). Polsky raises several challenges to the trial court's rendition of judgment based on these findings.

First, Polsky argues that the jury could not have found that he violated either section 232.033(a)(2) or 232.031(a) because those statutes apply only to subdivision lots "intended primarily for residential use." *See id.* § 232.022(b) (providing that sections 232.021-.043 apply only to land that is subdivided into two or more lots intended primarily for residential use). The court's charge to the jury specifically instructed that both the advertising requirement and final plat requirement applied only if the jury found that the subdivision lots were intended primarily for residential use. Having answered both liability questions in the affirmative, the jury must have made the subsidiary finding that, in fact, the subdivision lots were intended primarily for residential use. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003) (unless record demonstrates otherwise, appellate court must presume that jury followed instructions in jury charge). Thus, Polsky essentially challenges the jury's finding that the subdivision lots in "Sea Breeze Estates" were intended primarily for residential use. As an initial matter, Polsky's lots were presumed to be residential because they were each less than five acres in size. *See id.* § 232.022(b) ("A lot is presumed to be intended for residential use if the lot is five acres or less."). There was evidence in the record to support this presumption and the jury's finding that the lots were intended primarily for residential use. First, the Permit itself described the Sea Breeze Estate development as a "six lot residential subdivision." Exhibits admitted at trial from Polsky's Internet website also referred to Sea Breeze Estates as a "residential subdivision." Moreover, the Sea Breeze Estates sign located on the property described the future "estates" as a "Security Walled, Gated Community."

Polsky argues on appeal that the jury was precluded from finding that the lots were intended for a "primarily residential purpose" because he had re-zoned his lots from "single family dwelling" to "resort." But Polsky himself states that the "resort" designation includes five residential uses, including single family residence, RV park, trailer park, multifamily residence, and apartment building. Thus, the fact that the lots are zoned "resort" did not preclude the jury from finding that the primary intended use for the lots was residential as indicated by the Permit, the sign, and the website promoting the development.

**Civil penalties for violation of Local Government Code section 232.033(a)(2)**

Polsky challenges the jury's finding that he violated section 232.033(a)(2) by failing to include accurate information on a sign located on the property regarding water and sewer service and gas and electric utilities. Polsky asserts that the section 232.022(a) informational requirements apply only to signs that are true "for sale" signs and not to his sign, which he maintains was purely "informational" and constituted merely a "tickler" advising the public "as to what would come in the future." Polsky's argument that the statute applies only to advertising stating that the property is "for sale" is not supported by its plain language, which provides:

Brochures, publications, and *advertising of any form* relating to subdivided land:

(1) may not contain any misrepresentation; and

(2) except for a for-sale sign posted on the property that is no larger than three feet by three feet, must accurately describe the availability of water and sewer service facilities and electric and gas utilities.

14

Tex. Loc. Gov't Code § 232.033(a) (emphasis added). Nothing in the statute indicates that it is limited to signs declaring that property is "for sale." We will not read into a statute a limitation that is not there. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 256 (Tex. App.—Austin 2002, pet. denied). Rather, the statute plainly applies to "advertising of any form," which would include Polsky's sign even if, as he claims, it is a mere "tickler" designed to inform the public of the future development. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (plain meaning of text is best expression of legislative intent). We decline Polsky's invitation to consider anectodal legislative history consisting of a House Research Organization bill analysis in order to limit the broad application of this clear and unambiguous statute. *See id.* at 626 ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language."). We also observe that the jury could have reasonably found that Polsky's sign was in fact a "for sale" sign advertising the sale of lots in the Sea Breeze Estates subdivision. The sign invited readers to "Call Herb Houston Jr. Builder-Broker" and included the words "Owner Financed." There was evidence at trial that Polsky's website stated that "Lots are available for sale!" and referenced the sign by directing visitors to the website to "[t]ake Padre Blvd. passed [sic] beach exit 6. Lots on right where you will see our sign." And Polsky himself testified that he "advertised lots for sale" in Sea Breeze Estates.[4] We conclude that the "Sea Breeze Estates" sign was subject

---

[4] Because we hold that the statute's application is not limited to signs advertising property "for sale," we also reject Polsky's contention that the trial court erred by refusing Polsky's proposed jury question, which asked "Do you find that Larry Mark Polsky's Sea Breeze Estates sign advertised residential subdivision lots *for sale* without accurately describing the availability of water and sewer service facilities and elect and gas utilities." The trial court did not err in refusing to charge the jury in a manner that would predicate liability on a finding that Polsky's sign was one "for sale" rather than simply "advertising of any form."

15

to the requirements of Local Government Code section 232.033(a), and the State was therefore authorized to seek civil penalties against Polsky for any failure of the sign to comply with those requirements.[5]

In addition to asserting that his sign was not subject to regulation by Local Government Code section 232.033(a) at all, Polsky also maintains that the trial court judgment was in error because the State did not notify him that his sign violated the statute before filing an enforcement proceeding. According to Polsky, the State was required to notify him of the violation within 30 days after it first viewed his sign and discovered that it did not comply with section 232.033(a)'s requirement to provide facilities and utilities information. Polsky points to no statutory or other express requirement that the State provide prior notice before filing suit to enforce section 232.033(a). Rather, he cites other unrelated statutes that do provide for notice in the inapposite circumstance of an agency's action to assess administrative penalties. Polsky also invokes equitable principles such as estoppel, laches, election of remedies, and unclean hands. But Polsky did not plead these affirmative defenses in his answer, nor were they tried by consent. *See* Tex. R. Civ. P. 94; *see also Trevino v. Houston Orthopedic Ctr.*, 831 S.W.2d 341, 344 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("Estoppel and election of remedies must be affirmatively pleaded in order for appellant to rely on them on appeal."). Nor did Polsky request any jury instructions or

---

[5] For the first time on appeal, Polsky appears to complain that the statute's exemption from compliance for "for sale" signs no larger than three feet by three feet renders the statute unconstitutional because there is no "rational basis" for the exemption and because it violates due process and equal protection guarantees. We will not address this argument, however, because Polsky's challenge to the constitutionality of the statute has been waived. *See Loftin v. Lee*, 341 S.W.3d 352, 356 n.11 (Tex. 2011) (constitutionality of statute must be raised in trial court in order to be preserved for appellate review).

16

questions related to any of these affirmative defenses. *See* Tex. R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived.").

Moreover, Polsky did not demonstrate that he was harmed by the conduct he most strenuously objects to in his appellate briefing. Polsky argues that because the State's April 2013 letter regarding the effect of the temporary injunction did not also advise him that the sign he had taken down violated the informational requirements of Local Government Code section 232.033(a), it constituted an attempt to "trick" him into putting up a new sign that would also be in violation of section 232.033(a), subjecting him to even more civil penalties. Despite the fact that there is no evidence of intent by the State to do any such thing, there is also no evidence that the State's action induced him into any action that harmed him or benefitted the State because, as he puts it, he "wisely declined to act." Finally, this case is not one that meets the high standard for applying concepts such as reliance or estoppel against the State. *See, e.g.*, *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006) (explaining that barring estoppel claims against government helps preserve separation of powers because legislative prerogative would be undermined if government agents could, through mistake, neglect, or intentional act, effectively repeal laws by ignoring, misrepresenting, or misinterpreting duly enacted statutes or regulations); *Machete's Chop Shop, Inc. v. Texas Film Comm'n*, 483 S.W.3d 272, 282-83 (Tex. App.—Austin 2016, no pet.).

**Civil penalties for violation of Local Government Code section 232.031**

The jury found that Polsky offered the five or six Sea Breeze Estates lots for sale on a website without first obtaining final approval of the subdivision plat from the County in violation

17

of Local Government Code section 232.031.  *See* Tex. Loc. Gov't Code § 233.031.  Polsky does not dispute that he did not have final plat approval for the five or six lot Sea Breeze Estates subdivision but instead contends that his website advertising was for the properly platted three Ocean Side Subdivision lots.  The jury found otherwise, however, and their finding is amply supported by the evidence.  Exhibits were admitted at trial that establish that the website itself, which at all times had the heading "South Padre Sea Breeze Estates" described the development as a "subdivision of 6 lots," and as "five exclusive residential lots," and never as a subdivision composed of three lots. The preliminary plat Polsky submitted to the County identified "Sea Breeze Estates" as a re-subdivision of the existing three lot Ocean Side Subdivision.

Polsky next argues that the website ads were not ads for the sale of the lots because they did not list any prices and because there was no "multi-listing of these 5 or 6 lots."  This argument is belied by exhibits admitted at trial demonstrating that the website included the following: "Lots are available for sale! Call [xxx-xxx-xxxx] for updates and details!  Ready to build sites are being developed now!"  Significantly, the statute's definition of "sell" includes "an offer to sell" such as those made on Polsky's website.  *See id.* § 232.021(9).  We overrule Polsky's challenges to the trial court's judgment assessing civil penalties for Polsky's violation of Local Government Code section 232.031.

### *Election of Remedies*

On appeal Polsky contends that the "election of remedies" doctrine created a legal bar to the State's pursuit of civil penalties for his violation of Local Government Code section 232.033(a).  Polsky argues that the State elected its remedies at the initial stages of the case by

alleging that he violated section 232.031 by offering to sell lots in the Sea Breeze Estates subdivision before final plat approval and obtaining a temporary injunction on that basis. According to Polsky, having done so the State was barred by the "election of remedies" doctrine from seeking to assess civil penalties for violations of section 232.033(a). The election doctrine may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *See Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980). Thus, if a party successfully pursues one remedy against one defendant based on one set of alleged facts and then files a subsequent action against another defendant, the election of remedies will bar the second suit if the alleged facts or remedies in that suit are sufficiently inconsistent with the alleged facts or remedy sought in the first suit. *Id.* at 851-52. The inconsistency in the assertion of a remedy, right, or state of facts "must be so unconscionable, dishonest, contrary to fair dealing, or so stultif[y] the legal process or trifle[] with justice or the courts as to be manifestly unjust." *Id.* at 851.

In the present case the State has taken no inconsistent position either with regard to the relevant facts or the law. Rather, the State has chosen to enforce two separate sections of the Local Government Code that prohibit different conduct, both types of which the State alleged Polsky engaged in. Put differently, Polsky's sign violated the Local Government Code in two different ways and there is no inconsistency in the State's exercising its discretion to seek civil penalties for both types of violations. The election of remedies doctrine is not implicated by the State's decision to seek civil penalties for Polsky's violation of both section 232.031 and section 232.033(a).

19

***Denial of Motion for New Trial Based on Newly Discovered Evidence***

Polsky asserts that the trial court erred by refusing to grant a new trial based on the existence of "newly discovered evidence" consisting of the affidavit of Tom Tepper, the owner of land adjacent to and south of Polsky's. As an initial matter, the Tepper Affidavit was not made part of the appellate record and is only before us as an attachment to Polsky's brief in this appeal. We are not permitted to consider documents attached to an appellate brief that do not appear in the record. *See, e.g.*, *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.). In his motion for new trial, Polsky argued:

> Mr. Tepper's affidavit represents newly discovered evidence, which if the jury had heard and Polsky would have been allowed to question [the State's Investigator Don Gutierrez] about the fact that he called Mr. Tepper one day after he was told Mr. Tepper's sign existed would have greatly influenced the jury who never would have found Polsky violated 793 days of having his sign there and that Polsky was never notified by Mr. Gutierrez or anyone from the State about any "colonias" or "subdivision" sign violations meriting new trial.

To prevail on a motion for new trial, a party must demonstrate that: (1) the evidence came to his knowledge after trial; (2) the late discovery was not caused by his lack of due diligence; and (3) the evidence is so material that it probably would produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003). Whether to grant or deny a motion for new trial based on the ground of newly discovered evidence is within the trial court's discretion, and the trial court's decision will not be disturbed absent a manifest abuse of discretion. *Fantasy Ranch, Inc. v. City of Arlington*, 193 S.W.3d 605, 615 (Tex. App.—Fort Worth 2006, pet. denied). Motions for new trial

based on newly discovered evidence are disfavored unless the new evidence would cause a different result. *Kirkpatrick v. Memorial Hosp. of Garland*, 862 S.W.2d 762, 775 (Tex. App.—Dallas 1993, writ denied). We understand Polsky to argue that the jury would not have found that his sign was in violation of section 232.033(a) for 793 days if it had known that Investigator Gutierrez called Tepper about his non-complying sign immediately after learning of it but, presumably, no one similarly immediately informed Polsky that his sign was non-compliant. The trial court did not abuse its discretion in determining that this evidence would probably not have produced a different result, i.e., a jury finding that Polsky's non-compliant sign was on the property for less than the period of time the evidence showed that it was.[6] In fact, for the trial court to have determined that the outcome would have been different, it would have had to presume that the jury would either ignore uncontroverted evidence or fail to follow the instruction in the charge that "each day of a continuing violation is a separate violation." The trial court did not abuse its discretion by denying the motion for new trial on the ground of the evidence Polsky claims to have discovered after trial.

Polsky also argues that the Tepper Affidavit would have bolstered two affirmative defenses, specifically (1) that the State engaged in selective enforcement of section 232.033(a) by bringing a claim against him but not against four other similarly situated property owners, including Tepper, and (2) his sign met the "standard" the State was requiring of similarly situated signs. But Polsky abandoned these two defenses at trial by failing to introduce evidence of similarly non-

---

[6] Houston testified that the sign was erected on December 21, 2010 and was taken down on February 20, 2013. This corresponds to the number of days (793) the jury found that the non-compliant advertising continued.

compliant advertising by other property owners that he was aware of before trial.[7] Polsky also failed to request any jury instructions or questions regarding these sign defenses. The fact that the Tepper Affidavit may have bolstered these waived defenses is not a compelling reason for the trial court to provide Polsky with an opportunity to retry his case, and its refusal to do so was not an abuse of discretion.

*Excessiveness of the Fine*

In addition to his challenges to the finding that he violated Local Government Code section 232.033(a), Polsky asserts, without providing citations to any apposite authority, that the fine imposed for this violation was excessive. Polsky argues that the fine was excessive "pursuant to Texas Rules of Civil Procedure 324(b)(4) and pursuant to the Texas Constitution." Rule 324(b)(4) merely imposes the procedural requirement that a claim that a damages award is excessive must be preserved by filing a motion for new trial raising that complaint. *See* Tex. R. Civ. P. 324(b)(4). The rule provides no substantive criteria for evaluating the excessiveness of a fine. The only case Polsky cites is *Hudson v. United States*, 522 U.S. 93 (1997), a double-jeopardy case applying federal constitutional principles to the imposition of a criminal fine after assessment of an administrative penalty.

Article I, section 13 of the Texas Constitution does provide that "[e]xcessive bail shall not be required, nor excessive fines, nor cruel or unusual punishment inflicted." "Fines" as

---

[7] Polsky had attached photographs of the other signs to his responsive pleadings but never sought to have them admitted at trial. Polsky also failed to question Gutierrez about the other signs or inquire as to the State's enforcement activities with respect to those signs.

used in article I, section 13 includes civil penalties. *State v. Galveston, H. & S. A. Ry. Co.*, 97 S.W. 71, 78 (Tex. 1906), *rev'd on other grounds*, 210 U.S. 217 (1908). Prescribing the amount of a fine is "a matter within the discretion of the legislature," and a fine is not unconstitutionally excessive such that a court will override the legislature's discretion "except in extraordinary circumstances, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind." *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980) (quoting *State v. Laredo Ice Co.*, 73 S.W. 951, 953 (Tex. 1903)). In this case, the trial court imposed the statutory minimum civil penalty of $500 for each of the 793 violations of section 232.033(a), for a total of $376,500. *See* Tex. Loc. Gov't Code § 232.035(c) (providing for civil penalty of not less than $500 or more than $1,000 for each violation and for each day of continuing violation of section 232.033(a)). Polsky does not argue, nor would we agree, that the legislatively mandated fine of at least $500 for a violation of section 232.033(a) is so violative of article I, section 13's prohibition on excessive fines as to "shock the sense of mankind." In fact, the trial court did not have the discretion to assess a civil penalty in an amount less than the $500 daily minimum penalty. *See State v. City of Greenville*, 726 S.W.2d 162, 167-70 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (trial court erred by rendering judgment for less than the statutory daily minimum penalty of $100 multiplied by 1,419 days of violation found by jury). Rather, Polsky's quarrel is with the total amount of the civil penalty, which he claims to be excessive and essentially caused by the State's failure to tell him that his sign was non-compliant. Even if this argument could ever be compelling under other circumstances, it is not in the present case. The evidence at trial was that Polsky erected the sign on December 21, 2010, and took it down on February 20, 2013, after being ordered to do so by the

23

trial court. There is no evidence that the State was even aware of the sign before October 2012, when it began investigating Polsky's beachfront construction activities. Furthermore, Polsky did not take the sign down in response to the State's suit filed in January 2013 in which it alleged that the sign violated section 232.031, a violation that carried the same $500 per violation minimum penalty as section 232.033(a). There is no reason to believe, nor was there any evidence admitted at trial, that Polsky would have removed the sign in response to the State's informing him that it violated section 232.033(a). The amount of the civil penalty is the result of Polsky's own conduct in failing to comply with the requirements of the Local Government Code which, as an attorney himself, he was quite capable of ascertaining.

For the reasons stated above, we overrule Polsky's various challenges to the trial court's judgment imposing civil penalties for his violation of Local Government Code sections 232.031 and 232.033(a).

### *The State's Failure to Segregate Attorneys' Fees*

The trial court awarded the State $200,000 as its reasonable fees for prosecuting its claims against Polsky. At trial, Polsky asked the trial court to instruct the jury to segregate any attorneys' fees awarded among the State's three different claims. The court refused to so instruct the jury. On appeal Polsky asserts that the three different claims were independent of each other such that legal services required to prosecute each of the State's claims were not "inextricably intertwined" and thus segregation was required. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (segregation required when fee-recoverable claims are combined with non-recoverable claims and "at least some of the attorneys' fees are attributable only to claims for

which fees are not recoverable"). Polsky maintains that the State's failure to segregate its fees requires reversal of the attorneys' fees award "in the event that any part of the case is reversed by an Appellate Court or the Court orders a new trial in any portion of the case." Because we are affirming the trial court's judgment on all three of the State's claims against Polsky, we need not address this argument. We observe, however, that each of the State's claims was a fee-recoverable claim and therefore none of the attorneys' fees were attributable to a claim for which recovery of attorneys' fees was not authorized. *See* Tex. Loc. Gov't Code § 232.037(a)(3); Tex. Gov't Code § 402.006(c). For that separate reason the State was not required to segregate its fees. *See Chapa*, 212 S.W.3d at 313-14 (segregation required only when fee-recoverable claims are combined with non-recoverable claims); *Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 WL 6118573, at *9 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem. op.) (segregation not required when attorneys' fees statutorily available for each of two asserted claims). Polsky's challenge to the attorneys' fee award is overruled.

### Sanctions for Seeking to Disqualify State's Lead Counsel

After the State amended its petition to allege a violation of Local Government Code section 232.033(a), Polsky filed a notice of his intent to call as a witness at trial the State's lead attorney, Shelley Doggett, to testify about why she had not, in an April 2013 letter, advised him that the "Sea Breeze Estates" sign he had removed lacked the required information about water and sewer service facilities and gas and electric utilities and why she had "waited" until September 2013 to add an allegation that Polsky's sign violated Local Government Code section 232.033(a)(2). Polsky also moved to disqualify Doggett from representing the State at trial on the ground that she

would be called as a witness. The State moved to strike Polsky's motion to disqualify Doggett and requested monetary sanctions against him for filing a frivolous motion. The trial court denied Polsky's motion to disqualify and ordered Polsky to pay $2,500 as sanctions. On appeal Polsky argues that the trial court abused its discretion in awarding the requested sanctions. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (award of sanctions reviewed for abuse of discretion). We may reverse the sanctions award only if the trial court acted arbitrarily or unreasonably without reference to any guiding rules or principles. *Id.*

Polsky argued in his motion that the State's lead counsel should be disqualified because he intended to call her to testify about her alleged attempt to "trick" him into erecting a sign that violated the Local Government Code. Polsky asserted that because Doggett did not advise him in her April 2013 letter that the sign he had taken down violated section 232.033(a), she had attempted to "trick" him into putting up another nonconforming sign. Polsky also stated that he intended to call Doggett to testify about why she had not sought to amend the temporary injunction order to reflect that Polsky had violated section 232.033(a)(2) and why the State had not asserted a section 232.033(a)(2) violation until it amended its petition in September 2013. Finally, Polsky asserted that Doggett was in possession of some unidentified damaging information adverse to the State's interest. Polsky filed his motion three weeks before trial seeking to disqualify Doggett based on (1) his own characterization, unsupported by any record evidence, of her intent in sending the April 2013 letter and (2) his plan to attempt to elicit testimony from Doggett related to the State's litigation strategy.

The trial court's order awarding sanctions states that the sanction was imposed pursuant to Texas Civil Practice and Remedies Code section 10.001(2) for filing a motion to

disqualify that was not warranted by existing law or a nonfrivolous argument to modify existing law. *See* Tex. Civ. Prac. & Rem. Code § 10.001(2). The order also indicated that Polsky filed the motion with the improper purpose of harassment for which sanctions are authorized by section 10.001(1). *Id.* § 10.001(1). A reporter's record of the sanctions hearing is not part of the appellate record. Therefore, we presume that sufficient evidence supported the findings stated in the order. *See University of Tex. v. Bishop*, 997 S.W.2d 350, 357-58 (Tex. App.—Fort Worth 1999, pet. denied) ("Because UTA has failed to bring forth the reporter's record from the hearing on Bishop's motion for sanctions, however, we must presume that sufficient evidence was introduced to support the trial court's findings and the judgment based on them.").

On appeal Polsky also complains that the trial court failed to file adequate findings of fact to support the sanctions award after he requested that the court do so. To support this argument, Polsky points to Texas Rule of Civil Procedure 296. *See* Tex. R. Civ. P. 296 ("In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law."). But section 10.005 of the Texas Civil Practice and Remedies Code required that the trial court describe the underlying conduct and basis for the sanctions award in the order itself, which the trial court did. *See* Tex. Civ. Prac. & Rem. Code § 10.005. Moreover, in order to complain of the trial court's failure to file additional findings Polsky was required to file a notice of overdue findings of fact and conclusions of law, which he failed to do. *See* Tex. R. Civ. P. 297; *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 895 (Tex. 1986).[8]

---

[8] To the extent Polsky complains that he should have been permitted to call Doggett as a witness at trial and to introduce the April 2013 letter into evidence, such complaints were waived by Polsky's failure to attempt to call Doggett as a witness or seek to admit the letter into evidence. While he asserts that attempting to do so would have been futile and perhaps subject him to further

We overrule Polsky's challenge to the trial court's award of $2,500 to the State as sanctions for Polsky's filing a groundless motion to disqualify the State's lead counsel.

**CONCLUSION**

Having overruled all Polsky's challenges to the trial court's judgment and to the assessment of $2,500 in court-ordered sanctions, the judgment and the sanctions order are affirmed.[9]

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   May 13, 2016

---

sanctions, the fact remains that Polsky failed to make an offer of proof or proffer the testimony he would have elicited from Doggett and failed to obtain the trial court's ruling on the admissibility of any such evidence at trial.  Polsky has therefore waived any claim on appeal that the testimony and exhibit were erroneously excluded.  *See* Tex. R. App. P. 33.1, 33.2; *Lister v. Walters*, 247 S.W.3d 381, 383 n.1 (Tex. App.—Texarkana 2008, no pet.) ("To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court.").

[9] Polsky filed a motion requesting this Court to take judicial notice of what he represents to be certain pages from the Cameron County's Beach Access and Dune Protection Plan and a motion to file "additional authority" consisting of what he represents to be other pages from the Plan.  As the State points out in its response to these motions, the record already includes a copy of the Cameron County Dune Protection and Beach Access Plan, which was properly authenticated and admitted as an exhibit at trial.  We overrule both the request to take judicial notice and the motion to file additional authority.